**STUDEBAKER CORPORATION,**
Petitioner-Appellee,

v.

**Richard D. GITTLIN, Respondent-Appellant.**

**No. 387, Docket 30412.**

United States Court of Appeals
Second Circuit.

Argued April 1, 1966.

Decided April 5, 1966.

Charles H. Miller, New York City (Marshall, Bratter, Greene, Allison & Tucker, New York City, Herbert Rosenberg, New York City, and Robert M. Jaffe, of counsel), for respondent-appellant.

Milton Black, New York City (Nixon, Mudge, Rose, Guthrie & Alexander, New York City, Stuart A. Summit, New York City, and Martin R. Pollner, of counsel), for petitioner-appellee.

Ellwood L. Englander, Washington, D. C., for Securities and Exchange Commission, appearing at request of court.

Before LUMBARD, Chief Judge, and FRIENDLY and ANDERSON, Circuit Judges.

FRIENDLY, Circuit Judge:

Richard Gittlin, a stockholder of Studebaker Corporation, a Michigan corporation, appeals from an order of the District Court for the Southern District of New York, in an action brought against him by the corporation. The order enjoined the use of other stockholders' authorizations in a New York state court proceeding to obtain inspection of Studebaker's shareholders list, N. Y. Business Corporation Law, McKinney's Consol. Laws, c. 4, § 1315, save after compliance

with the Proxy Rules of the Securities and Exchange Commission issued under § 14(a) of the Securities Exchange Act.

█ Because of the exigencies of time usual in contests for corporate control, both the district court and this court have considered the matter on an expedited basis. The initial paper in the action was an order to show cause, supported by an extensive affidavit of Studebaker's counsel, signed on March 22 before the filing of a complaint. A hearing was held on March 23, at which Gittlin waived any objection as to lack of personal service but not as to the absence of a complaint, and the injunction issued on March 25. Meanwhile, on March 24 a complaint had been filed. Although it would have been better to file a complaint along with the affidavit and order to show cause, we hold that under the circumstances the court could properly treat the affidavit as a complaint and the order to show cause as requiring an early answer, F.R.Civ.P. 12(a). Hadden v. Rumsey Prods., Inc., 196 F.2d 92, 95 (2 Cir.1952).

Studebaker's resort to the district court was occasioned by the service upon it on March 21 of papers in a proceeding begun by Gittlin in the Supreme Court of New York to inspect the record of the company's shareholders. Gittlin's application to the New York court recited that he was the record owner of 5,000 shares of Studebaker stock and that he was acting on behalf of himself and on written authorization from 42 other shareholders owning in excess of 145,000 shares which constituted more than 5% of the company's stock; that he and his associates had been endeavoring to get the Studebaker management to agree to certain changes in its board of directors and had announced their intention to solicit proxies for the forthcoming annual meeting if the request was not met; and that when these talks had broken down, he had requested access to the stockholders list and had been refused.

Studebaker's affidavit and subsequent complaint allege that Gittlin obtained the authorization from the 42 other stockholders in violation of the Proxy Rules issued by the SEC under § 14(a) of the Securities Exchange Act. Specifically the company contends that Gittlin claimed to be holding the authorizations as early as March 14, and that at that time he had made no filing of proxy material with the SEC. Consequently, Studebaker claims, the authorizations were necessarily obtained in violation of Rules 14a–3 and 14a–6, the former prohibiting solicitation in the absence of a proxy statement containing specified information and the latter requiring that preliminary copies of the proxy material be filed with the SEC at least ten days prior to the date definitive copies of such material are first sent or given to security holders unless the Commission authorizes a shorter period. Finding these allegations to be sustained, Judge Cannella enjoined use of the authorizations in the state court proceeding.

Gittlin attacks the injunction on a number of grounds, in addition to the one on which we have already passed. He challenges Studebaker's standing to enjoin violation of the Proxy Rules by a stockholder, contends that the Rules do not include authorizations for the limited purpose of exercising a right of inspection provided by state law, argues that the order violated the anti-injunction statute, 28 U.S.C. § 2283, and urges finally that Studebaker's application was wanting in equity because no showing had been made of irreparable harm.

█ The first point rests on the statement in Howard v. Furst, 238 F.2d 790, 793 (2 Cir.1956), cert. denied, 353 U.S. 937, 77 S.Ct. 814, 1 L.Ed.2d 759 (1957):

> "We find nothing in the language of Section 14(a) or in the legislative history of the Securities Exchange Act of 1934 to warrant an inference that it was the intention of the Congress to create any rights whatever in a corporation whose stockholders may be solicited by proxy statements prepared in contravention of the statutory mandate."

That decision has been criticized both at the time and since, see 70 Harv.L. Rev. 1493 (1957); 45 Calif.L.Rev. 186 (1957); 2 Loss, Securities Regulation 949–950 (1961). In Brown v. Bullock, 294 F.2d 415, 422 (2 Cir.1961) (concurring opinion), Judge Clark expressed his expectation that "some day we shall have to disavow" it. The day for substantial disavowal came when the Supreme Court decided J. I. Case Co. v. Borak, 377 U.S. 426, 431, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), clearly overruling *Howard* on the precise point decided, the ability of a stockholder to assert in federal court a derivative claim of harm to the corporation from a transaction proposed in an allegedly misleading proxy statement. If § 27 of the Securities Exchange Act authorizes a stockholder to assert such a claim on the corporation's behalf, as held in Borak, it must also authorize the corporation to do so on its own. The only possible area left for *Howard* would thus be in cases such as this in which the corporation sought relief against unlawful proxy solicitation where no transaction damaging to the corporation is proposed and the struggle, at least on the surface, is simply for control. Any such principle would necessarily rest on a view of the Securities Exchange Act as contemplating that in such contests for control the corporation, as represented by its management, should maintain a posture of strict neutrality. But the legislative history shows that Congress anticipated protection from "irresponsible outsiders seeking to wrest control of a corporation away from honest and conscientious corporation officials," S.Rep. No. 1455, 73d Cong., 2d Sess. 77 (1934), quoted in 2 Loss, supra at 950, and the Proxy Rules

are shot through with provisions recognizing that in contests for control the management has a role to play as such and not merely insofar as the managers are stockholders. Moreover, it is common knowledge that a contest for control may be only the prelude to an arguably damaging transaction to be carried out by the winner with the aid of the corporate proxy machinery or even without further stockholder vote. With *Howard* overruled by the Supreme Court in its actual holding, we see no reason for endeavoring to maintain such peripheral existence for it.

The contention most heavily pressed is that § 14(a) of the Securities Exchange Act does not include authorizations for the limited purpose of qualifying under a state statute permitting the holders of a given percentage of shares to obtain inspection of a stockholders list.[1] The statute is worded about as broadly as possible, forbidding any person "to solicit any proxy or consent or authorization" in respect of any security therein specified "in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors"; the definitions in the Proxy Rules, 14a–1, exhaust the sweep of the power thus conferred. The assistant general counsel of the SEC, which responded to our request for its views with promptness and definitude, stated at the argument that the Commission believes § 14(a) should be construed, in all its literal breadth, to include authorizations to inspect stockholders lists, even in cases where obtaining the authorizations was not a step in a planned solicitation of proxies.[2]

1. Under the Proxy Rules, 14a–7, the corporation has the alternative of furnishing opponents of management with a copy of the list or of mailing their soliciting material—the latter course being obviously less satisfactory to the challengers.

2. The Commission states in a letter to the court:

"Section 14(a) of the Securities Exchange Act of 1934 and the Commission's rules thereunder apply to any proxy, consent, authorization and are not limited to proxies, consents, and authorizations in situations involving elections to office. There is no reason to suppose that Congress intended that the protective provisions of the

We need not go that far to up-hold the order of the district court. In SEC v. Okin, 132 F.2d 784 (2 Cir.1943), this court ruled that a letter which did not request the giving of any authorization was subject to the Proxy Rules if it was part of "a continuous plan" intended to end in solicitation and to prepare the way for success. This was the avowed purpose of Gittlin's demand for inspection of the stockholders list and, necessarily, for his soliciting authorizations sufficient to aggregate the 5% of the stock required by § 1315 of New York's Business Corporation Law. Presumably the stockholders who gave authorizations were told something and, as Judge L. Hand said in *Okin*, "one need only spread the misinformation adequately before beginning to solicit, and the Commission would be powerless to protect shareholders." 132 F.2d at 786. Moreover, the very fact that a copy of the stockholders list is a valuable instrument to a person seeking to gain control, see fn. 1, is a good reason for insuring that shareholders have full information before they aid its procurement. We see no reason why, in such a case, the words of the Act should be denied their literal meaning. Cf. Halsted v. SEC, 86 U.S. App.D.C. 352, 182 F.2d 660, 664, cert. denied, 340 U.S. 834, 71 S.Ct. 68, 95 L. Ed. 612 (1950); Aranow and Einhorn, Proxy Contests for Corporate Control 70, n. 91 (1957).

A far more difficult question is raised by the anti-injunction statute, 28 U.S.C. § 2283, which forbids a federal court to grant "an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judg-ments." Judge Cannella dealt quite summarily with this, saying only that his "decision is not violative of 28 U.S.C. § 2283, and does not restrict the state court in any manner." If this implies that the statutory bar is avoided by directing the injunction solely to a party as distinguished from the state court, it runs counter to settled doctrine. Oklahoma Packing Co. v. Oklahoma Gas & Elec. Co., 309 U.S. 4, 9, 60 S.Ct. 215, 84 L.Ed. 447 (1940); H. J. Heinz Co. v. Owens, 189 F.2d 505, 507 (9 Cir.1951), cert. denied, 342 U.S. 905, 72 S.Ct. 294, 96 L.Ed. 677 (1952); Furnish v. Board of Medical Examiners, 257 F.2d 520, 523 (9 Cir.), cert. denied, 358 U.S. 882, 79 S.Ct. 123, 3 L.Ed.2d 111 (1958). Studebaker's position before us was rather that the order was not within the prohibition since it merely enjoined use of the authorizations, leaving Gittlin free to prosecute his New York action on other grounds.[3] We do not find this persuasive; § 2283 forbids any federal injunction substantially interfering with the prosecution of a pending state proceeding unless an exception applies. See Hill v. Martin, 296 U.S. 393, 403, 56 S.Ct. 278, 80 L.Ed. 293 (1935); Sperry Rand Corp. v. Rothlein, 288 F.2d 245, 247–248 (2 Cir.1961); cf. Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951); Pugach v. Dollinger, 277 F.2d 739, 742–743 (2 Cir.1960), aff'd, 365, U.S. 458, 81 S.Ct. 650, 5 L.Ed.2d 678 (1961). The question thus becomes whether the injunction issued by the district court came within one of the exceptions recognized by the statute.

The phrase "except as expressly authorized by Act of Congress" was, according to the Reviser's Note accompanying § 2283, intended "to cover all

---

proxy rules should not reach other situations in which a stockholder is requested to permit another to act for him, whatever may be the purpose of the authorization."

The Proxy Rules, 14a-2(a), exempt solicitation otherwise than on behalf of management where the total number of persons solicited is not more than ten.

3. In fact the New York Supreme Court has granted Gittlin's application on the basis of a common-law right, without regard to the authorizations on which, as its opinion makes clear, it considered the federal injunction prohibited reliance. Its decision might render this action of academic interest save that Studebaker has announced its intention to appeal and seek a stay.

exceptions" derived from federal statutes. In Amalgamated Clothing Workers v. Richman Bros. Co., 348 U.S. 511, 516, 75 S.Ct. 452, 99 L.Ed. 600 (1955), the Supreme Court declared that "no prescribed formula is required; an authorization need not expressly refer to § 2283." Beyond this, exactly what is required by the statutory term is unclear; the courts are left to bear the burden of uncertainty in construing language widely recognized to be "unfortunate" to say the least. See Wright, Federal Courts 154–156 (1963); Note, 74 Harv. L.Rev. 726, 737 (1961). A case does not fall within the statutory exception merely because another federal statute permits injunctive relief in general terms. See Baines v. City of Danville, 337 F.2d 579 (4 Cir.1964), cert. denied, 381 U.S. 939, 85 S.Ct. 1772, 14 L.Ed.2d 702 (1965) (Civil Rights Act, 42 U.S.C. § 1983).[4] On the other hand, in holding that § 2283 was not intended to restrict relief available to the United States itself, the Supreme Court has recognized that the policy of the anti-injunction statute "is much more compelling when it is the litigation of private parties which threatens to draw the two judicial systems into conflict than when it is the United States which seeks a stay to prevent threatened irreparable injury to a national interest," Leiter Minerals, Inc. v. United States, 352 U.S. 220, 225–226, 77 S.Ct. 287, 291, 1 L.Ed.2d 267 (1957). In Bowles v. Willingham, 321 U.S. 503, 510, 64 S.Ct. 641, 88 L.Ed. 892 (1944), the Supreme Court held the predecessor of § 2283 to have been impliedly amended by § 205(a) of the Emergency Price Control Act of 1942, 56 Stat. 33, authorizing the Price Administrator to seek injunctive relief against acts or practices in violation of the statute. That the decision rested on the grant of broad injunctive power to a federal agency rather than simply the exclusive federal jurisdiction of the subject there in question was underlined in a subsequent case where the Court declared that, although jurisdiction in that instance was concurrent, the authority of § 205(a) was "broad enough to justify an injunction to restrain state court evictions." Porter v. Dicken, 328 U.S. 252, 255, 66 S.Ct. 1094, 1096, 90 L.Ed. 1203 (1946). In *Richman* the Court clearly implied that an injunction restraining state proceedings would fall within the "expressly authorized" exception where it was sought by the NLRB, 348 U.S. at 516–517, 75 S.Ct. 452 and apparently placed Capital Service, Inc. v. NLRB, 347 U.S. 501, 74 S.Ct. 699, 98 L.Ed. 887 (1954), upon that basis.

Section 21(e) of the Securities Exchange Act provides:

"Whenever it shall appear to the Commission that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the provisions of this Act, or of any rule or regulation thereunder, it may * * * bring an action * * * to enjoin such acts or practices, and upon a proper showing a permanent or temporary injunction or restraining order shall be granted without bond."

The congressional policy underlying this provision, which in substance and organization is substantially the same as that considered in the *Bowles* case, was to insure effective enforcement of the Exchange Act and SEC rules for the protection of the investing public. Under

---

4. With respect to the availability of federal injunctive relief to restrain pending state proceedings allegedly violating rights protected by 42 U.S.C. § 1983, a majority of the circuits support the *Baines* decision. See, e. g., Sexton v. Barry, 233 F.2d 220 (6 Cir. 1956); Smith v. Village of Lansing, 241 F.2d 856 (7 Cir. 1957); but see Cooper v. Hutchinson, 184 F.2d 119, 124 (3 Cir. 1950). The Supreme Court has left the question open, see Dombrowski v. Pfister, 380 U.S. 479, 484 n. 2, 85 S.Ct. 1116, 14 L. Ed.2d 22 (1965); Cameron v. Johnson, 381 U.S. 741, 85 S.Ct. 1751, 14 L.Ed.2d 715 (1965). On the other hand, the Fifth Circuit has found a sufficient indication of Congressional intention to permit enjoining state actions in Title II of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a–2000a–6. Dilworth v. Riner, 343 F.2d 226 (1965).

the rationale of the *Bowles* decision and the *Richman* opinion, there is little question that if the Commission had sought the injunction here, § 2283 would not have blocked its way. We are not persuaded that a different decision is compelled under the circumstances of this case. If the policy of the anti-injunction statute is superseded by the need for immediate and effective enforcement of federal securities regulations and statutes, the fact that enforcement here is by a private party rather than the agency should not be controlling. The Supreme Court has recognized such a suit as being "a necessary supplement to Commission action" in providing the protection for investors contemplated by the statute, J. I. Case Co. v. Borak, 377 U.S. 426, 432, 84 S.Ct. 1555, 1560 (1964). The situation is quite different from that in labor relations where Congress has vested the sole right to seek injunctive relief to prevent violations of the Act in the National Labor Relations Board, 29 U.S.C. § 160(j) and (*l*). See Amalgamated Clothing Workers v. Richman Bros. Co., supra, 348 U.S. at 516–517, 75 S.Ct. 452; International Union of Elec. Workers, etc. v. Underwood Corp., 219 F.2d 100 (2 Cir.1955). Section 16 of the Clayton Act, 15 U.S.C. § 26, affords a closer parallel, since there as here the private suit plays an important role in enforcement. However, the cases refusing to enjoin state proceedings under that statute have rested on the ground that the prosecution of the state court action sought to be enjoined would involve no "violation of the anti-trust laws," but would simply require the federal court plaintiff to assert an antitrust defense in the state tribunal. See Red Rock Cola Co. v. Red Rock Bottlers, Inc., 195 F.2d 406 (5 Cir.1952); Lyons v. Westinghouse Elec. Corp., 201 F.2d 510 (2 Cir.),

cert. denied, 345 U.S. 923, 73 S.Ct. 781, 97 L.Ed. 1354 (1953). The court in *Red Rock* expressly disclaimed deciding whether an injunction might not issue in a case where the very act of prosecuting the state proceeding violated federal law, 195 F.2d at 409—the situation here where the authorizations on which the state action was predicated had been obtained in contravention of the federal statute. Since we hold the "expressly authorized" exception to be applicable, we need not consider whether the court's injunction could be supported as "in aid of its jurisdiction," as to which see the thorough discussion in T. Smith & Son, Inc. v. Williams, 276 F.2d 397 (5 Cir. 1960).

■■■■ This brings us to Gittlin's claim that Studebaker made no adequate showing of need for injunctive relief in failing to demonstrate "irreparable injury."[5] Recitation of this term generally produces more dust than light. A plaintiff asking an injunction because of the defendant's violation of a statute is not required to show that otherwise rigor mortis will set in forthwith; all that "irreparable injury" means in this context is that unless an injunction is granted, the plaintiff will suffer harm which cannot be repaired. At least that is enough where, as here, the only consequence of an injunction is that the defendant must effect a compliance with the statute which he ought to have done before. To be sure, time is of the essence in proxy contests—at least the participants generally think it to be. But the district court could properly have considered that the public interest in enforcing the Proxy Rules outweighed any inconvenience to Gittlin in having to start again. In this aspect decision rested in the judge's sound discretion; we find no abuse.

Affirmed.

5. The SEC has made clear that although in its view the authorizations here in question were within the ambit of the Proxy Rules and the latter were not adhered to, it considers the question of an injunction to be "one to be determined by the Chancellor in his sound discretion."