Application of Cornelius T. O'SULLIVAN, Ichabod F. Scott and Michael J. Clarke, as individuals and as Representatives of Others Similarly Situated, Plaintiffs

v.

Paul F. MUNDT, Philip J. Rotella, John B. Lovett, John F. McAlevey, Harold K. Grune, constituting the Board of Supervisors of the County of Rockland, the County of Rockland, and Charles Furst and Arthur Ackerman, as Commissioners of the Board of Elections of the County of Rockland, and the Board of Elections of Rockland County, Defendants,

and

Samuel J. Abate, as a Taxpayer of the County of Rockland, and as a Representative of Others Similarly Situated, June Molof, Mindy Baker, Gloria English, Joyce Braziller, Linda Berns and Judy Bartosik, as Individuals and as Representatives of Others Similarly Situated, Party-Defendants.

No. 69 Civ. 3814.

United States District Court
S. D. New York.

Sept. 15, 1969.

Paul H. Rivet, Orangeburg, N. Y., for plaintiffs.

J. Martin Cornell, County Atty., County of Rockland, New City, N. Y., for defendants Paul F. Mundt, and others.

Barr & Barone, Spring Valley, N. Y., for party-defendant Samuel J. Abate.

Doris Friedman Ulman, Spring Valley, N. Y., for party-defendants Judy Molof, Mindy Baker, Gloria English, Linda Berns and Judy Bartosik.

MEMORANDUM

LASKER, District Judge.

Plaintiffs move for an injunction setting aside, pending determination by the New York State Court of Appeals, a reapportionment plan for the election of the Board of Supervisors of the County of Rockland and mandatorily enjoining on an interim basis the nomination and election of Board members at large. The proceeding is brought in accordance with Title 28 U.S.C. § 1343(3), which reads:

> "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
>
> \*   \*   \*   \*   \*   \*
>
> "(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

The plaintiffs claim that the plan which they seek to set aside is a deprivation under color of State law of their federal constitutional rights.

Since 1965 litigation has been carried on in the federal and State courts to reapportion the Board of Supervisors of Rockland County. The instant motion is the latest in a series of legal twists and turns, the history of which follows:

In the summer of 1965 an action entitled "Lodico v. Board of Supervisors of the County of Rockland" was commenced in the New York State Supreme Court and then removed to this court. A three-judge court was convened, and the matter was subsequently referred to Judge Croake, whose decision (Lodico v. Board of Supervisors of the County of Rockland, 256 F.Supp. 440, 442, May 20, 1966), declared the County of Rockland to be malapportioned and directed that a plan of reapportionment be placed on the ballot in November 1966.

A local law was thereafter adopted by the Board of Supervisors providing for a plan of reapportionment, which Judge Croake approved in a decision of October 11, 1966 (65 Civ. 263). The plan was placed on the ballot in November 1966 and defeated by the voters. Two further plans were placed on the ballot in the spring of 1967, and both were rejected by the voters. This was followed by a referendum as to a new proposed County charter, which was also rejected by the voters.

In the fall of 1968, Samuel J. Abate, designated a party-defendant in this proceeding, commenced a taxpayer's action in the New York State Supreme Court to compel the Board of Supervisors of Rockland County to adopt a plan to be placed on the ballot in November of that year. The County moved to dismiss the complaint. The motion was denied, but Judge Gagliardi temporarily stayed the action. Judge Gagliardi's stay was apparently based on Judge Croake's reported decision of May 1966 referred to above, and without knowledge of Judge Croake's unreported decision of October 11, 1966. Noting this fact, Judge Croake wrote Judge Gagliardi on March 5, 1969,[1] stating in part:

> "Throughout the Lodico proceedings, the judges of this court sitting on the case expressed their belief that the apportionment of local elective bodies is a matter better left to the state courts whose judges are more familiar with the localities and problems involved. (See opinion of May 20, 1966, p. 10–11) It would be particularly inappropriate now, with a state action pending, for this court to reassert jurisdiction. To do so would not result in any savings of time or effort since the findings made here are now nearly three years old. Any determination now should be made on the present factual situation."

---

1. Exhibit C to Affidavit of J. Martin Cornell in opposition to the instant motion.

After receiving Judge Croake's letter of March 5, 1969. Judge Gagliardi on March 12, 1969 lifted the stay in the Abate action.

Thereafter the Board of Supervisors of Rockland County adopted an interim plan of reapportionment weighing the vote of each supervisor in proportion to the population of each town. The frustration and unhappiness of the situation was intensified when the New York State Supreme Court disapproved the plan and directed the Board to submit another.

Finally, on June 24th of this year, the Board adopted a plan of reapportionment,[2] which was approved by Justice Joseph F. Hawkins of the New York State Supreme Court by decisions of July 21 and July 30, 1969. The Appellate Division of the Supreme Court, Second Department, affirmed Justice Hawkins' decision by order dated August 26, 1969. Application was then made by one of the plaintiffs to the Honorable Charles D. Breitel of the New York State Court of Appeals on September 2, 1969, for a stay of the nomination and election of the candidates to be chosen under the new plan. Judge Breitel denied the application. Appeals from the decision and order of the Appellate Division approving the plan will be heard by the New York State Court of Appeals on the 23rd of this month. Claiming that the plan which has now been approved after this long, arduous history is still defective in meeting constitutional requirements, the plaintiffs move for an injunction setting aside, pending determination by the New York State Court of Appeals, the plan approved by Justice Hawkins and the Appellate Division in the Abate action and mandatorily enjoining, on an interim basis, the nomination and election of Board members at large. For the reasons set forth below the motion is denied.

* * *

On argument of the motion, counsel for the plaintiffs acknowledged that the relief requested is "extraordinary and sweeping," and the acknowledgment is accurate. We deal first with the request to impose an interim at large election plan. While the court cannot agree with the contention of the County attorney that "it is patently evident that the Court does not have jurisdiction to trespass in the domain of the Legislative Body of the County of Rockland," nevertheless it agrees with his statement that "[it] is preposterous to propose at this juncture that the deliberations of the Legislative Body of the County of Rockland and the actions of the State Court should be swept aside and that the Federal Court should now impose a new structure of Government for the County of Rockland." It would be "preposterous" to impose such a new interim plan on the County not only because an experienced and respected judge of the New York State Court of Appeals has declined to issue a stay in the existing situation, and not only because the matter will be heard by the full New York State Court of Appeals within days, but also because of the sound observation expressed by Judge Croake in previous litigation on this very matter (supra) that "the judges of this court sitting on the case expressed their belief that the apportionment of local elective bodies is a matter better left to the state courts whose judges are more familiar with the localities and problems involved." Furthermore, absent the clearest demonstration that on its face the plan which has been approved by the State courts is unconstitutional under the doctrine of Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L. Ed.2d 663 (1961), it would be rash, if not an abuse of discretion, for this court to act to impose an alternate scheme of governing the County without a shred of evidence before it either that the Resolu-

2. Known as "Resolution No. 311."

tion No. 311 plan is defective or that an at large scheme would be sound.

The considerations expressed above apply with equal force to that branch of the motion requesting a stay, pending the hearing in the New York State Court of Appeals, of the activation of the plan which has been approved to date by the State courts. But there are further reasons why this relief should not be granted.

The County argues that, since the State action is presently pending between the identical parties and the State courts have determined that the proposed plan meets the requirements of the federal Constitution and will hereafter be subject to review by the United States Supreme Court, the matter is res judicata. It contends, also, that Title 28, U.S.C. § 2283, which reads:

> "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments"

deprives this court of the power to grant the requested injunction. While these arguments have a superficial attraction, they seem questionable. The doctrine of res judicata does not appear to apply, since the relief requested here is not precisely the same as that requested in the Abate case, and in any event, to hold that the doctrine would apply here would mean that it applied in all cases in which federal courts are asked to stay the decision of a State court, which is clearly not the case. There is serious question, too, as to whether the anti-injunction provision of Section 2283 deprives the court of the power to issue the relief requested here, since it has been held that the civil rights acts (42 U.S.C. § 1983 and 28 U.S.C. § 1343) are "Acts of Congress" which "authorize" a court of the United States to stay proceedings in a State court. See, for example, Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22

(1964); Baines v. City of Danville, 337 F.2d 579 (4th Cir., 1964); and the discussion in Footnote 4 of Studebaker Corp. v. Gittlin, 360 F.2d 692, at 697.

■ Although there may be weaknesses in these two contentions made by the County, there is no doubt that the County is correct in arguing that this court should abstain from exercising its jurisdiction in this case. There is no need to cite at length the numerous cases which have shaped the abstention doctrine, i. e., that in the interest of comity between federal and State courts, federal courts should not intervene in State court proceedings unless there is clear evidence that the federal constitutional rights of the parties have not been considered by the State courts or, if considered, have not been adjudged in good faith. Here neither of these requirements is met. The central, if not the sole determination of the Abate case, has been whether the plan there litigated met the requirements of the federal Constitution. The opinions of Justice Hawkins affirmed by the Appellate Division, Second Department, have dealt with this issue in detail, and there is nothing on their face indicating either evasion of the issue or, although no determination is made on the merits in this opinion, of error. The application of the doctrine of abstention in this case is fortified by the expressions of Judge Croake and his colleagues on the three-judge court, who have clearly expressed themselves as believing that "the apportionment of local elective bodies is a matter better left to the state courts whose judges are more familiar with the localities and problems involved."

The subject of legislative apportionment appears to be a field *par excellence* in which local authorities and State courts should not only be permitted but encouraged to exercise their own powers for the development of plans which meet federal constitutional requirements. This view of the matter is supported by the statement in Footnote 2 of Lucas v. Colorado General Assembly, 377 U.S.

1094

713, 84 S.Ct. 1459, 12 L.Ed.2d 632 (1964) at 716, 84 S.Ct. at 1463:

"The District Court wisely refrained from acting at all until a case pending in the Colorado Supreme Court was decided * * *."

▮ Finally, it must be observed that, even if the arguments stated above were not valid, the plaintiffs in this action have not met the test of establishing that they will probably succeed on the merits of the case. To the contrary, the probability is substantially greater that those who oppose this motion will ultimately prevail.

Accordingly the motion for a preliminary injunction is denied.

It is so ordered.