<hr />

**VERNITRON CORPORATION and American Medical Instrument Corporation, Plaintiffs,**

v.

**Paul BENJAMIN, Defendant.**

**No. 70 Civ. 2518.**

United States District Court.
S. D. New York.
July 27, 1970.

---

Marshall, Bratter, Greene, Allison & Tucker, New York City, for plaintiffs; Charles H. Miller, Richard L. Bond, Arthur J. Ginsburg, New York City, of counsel.

Paul, Weiss, Goldberg, Rifkind, Wharton & Garrison, New York City, for defendant; Edward N. Costikyan, Joel S. Taylor, of counsel.

LASKER, District Judge.

Plaintiffs move for an order restraining the defendant and his attorneys from taking any steps or proceedings in the prosecution of a lawsuit now pending in the Supreme Court of the State of New York, County of New York, between the same parties, entitled "Paul Benjamin v. Vernitron Corporation, et al." In order to avoid the confusion which would arise by referring to the parties either as plaintiff or defendant (since Vernitron, et al., are plaintiffs here and defendants in the state court action, whereas Paul Benjamin is defendant here and, with others, plaintiff in the state court), references will be made to the parties by name.

I.

On December 20, 1967, Vernitron (a New York corporation since acquired by Vernitron, a Delaware corporation) and its affiliate entered into a written contract with Benjamin and his wholly-

owned corporation, American Medical Instruments Corporation ("Amico") for sale of all the assets of Amico to the affiliate of Vernitron New York. The contract provided that Benjamin was to receive $1.5 million worth (later reduced to $1.3 million) of Vernitron common stock which was to be placed in escrow with Vernitron's attorneys, Marshall, Bratter, Greene, Allison & Tucker under prescribed conditions. The contract specified a procedure for the registration by Vernitron of the shares held in escrow for Benjamin. Pursuant to these terms, Benjamin secured the registration of slightly less than $250,000 worth of shares. In February 1969, Benjamin requested (as he had the right to) that the remainder of the shares be registered, but Vernitron refused.

On November 6, 1969, Benjamin brought suit in the Supreme Court of the State of New York, County of New York, against Vernitron, its affiliate, and Marshall, Bratter, Greene, Allison & Tucker as escrow agent. This is the action the prosecution of which Vernitron now asks this court to enjoin. In his state court suit Benjamin set forth causes of action for (1) damages of $1,050,000 for failure to register the remaining shares in escrow; (2) damages for failure to place further stock in escrow in order to total $1.3 million in value; (3) specific performance of the contract, delivery of the shares and dividends thereon; and (4) exemplary damages. Vernitron counterclaimed, alleging breach of warranty by Benjamin and demanding rescission of the contract for failure of consideration. On June 2, 1970, Benjamin served notice of motion in the state court action for summary judgment in the amount of $1,051,085.63 on the first cause of action (together with severance thereof from the remaining causes of action).

On June 16, 1970, Vernitron commenced the instant action against Benjamin and simultaneously or at about the same time moved in the state court for a stay of further proceedings therein pending the determination of the federal court action.

In the case here, Vernitron alleges violations of Sections 10(b) and 29(b) of the Securities Exchange Act of 1934, as well as (under the pendent jurisdiction of this court) common law fraud and breach of contract. The complaint requests rescission of the contract and damages. As stated above, the instant motion asks that Benjamin and his attorneys be stayed from proceeding with the prosecution of the state case. It is Vernitron's contention that a stay of the state court proceedings is proper because a potential conflict between the state and federal jurisdictions exists, since the issues relating to its counterclaim in the state court may be decided there in such a way as to constitute *res judicata,* or so as collaterally to estop Vernitron from presenting its Securities Exchange Act claims to this court.

In reply, Benjamin argues that whatever determination may be made on his motion for summary judgment in the state court will not constitute *res judicata* or collaterally estop Vernitron from litigating its Securities Act claims here, and that in any event the anti-injunction statute, set forth in Title 28, U.S.C. § 2283, acts as a bar to this court's granting an injunction against prosecution of the state court action.

In passing, it should be noted that at the time of the argument in this court of the motion for a stay of the state court proceeding the state court had rendered no decision on Benjamin's motion for partial summary judgment, nor on Vernitron's motion for a stay. On July 16, 1970, Mr. Justice Helman filed an opinion granting Benjamin substantially the relief requested in his motion, and denying Vernitron a stay. No judgment has yet been entered pursuant to the opinion. In his decision Justice Helman found that Vernitron's damages, if any, were not, as alleged, indeterminable but, rather, ascertainable. Without a detailed explanation he ruled "as being properly placed in issue the sum of $42,487.36 as

the sum in dispute"; as to Benjamin's alleged breach of warranties, that the alleged breach of warranty even in the claimed amount of $65,000 could "hardly be said to constitute failure of consideration"; that there was insufficient factual data contained in Vernitron's affidavits to warrant rescission, and that the Vernitron-Benjamin contract price was not computed on the basis of a multiple of Amico's earnings. His award was in the amount of the relief requested ($1,051,085.63) less the contested claim of $42,487.36 for breach of warranty.

## II.

The issues before me are (A) whether the anti-injunction statute stands as a bar to granting an injunction against prosecution of the state court proceeding; and (B) whether, even if there is no such bar, an injunction should be granted in accordance with general equitable considerations.

### (A) The Anti-Injunction Statute

Title 28, U.S.C. § 2283, reads:

"A court of the United States may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

There is no contention that any judgment of this court exists, and consequently the third exception to the rule is inapplicable here.

Vernitron contends, under the authority of Studebaker Corporation v. Gittlin, 360 F.2d 692 (2d Cir. 1966), that there is a basis for private plaintiffs to come within the "expressly authorized" exception of 28 U.S.C. § 2283. Benjamin vigorously contests this reading of Studebaker, which held that under the provision of Section 21(e) of the Securities Exchange Act (15 U.S.C. § 78u) authorizing the SEC to obtain injunction against persons "engaged or about to engage" in acts in violation of the Securities Exchange Act, circumstances could exist constituting a basis for private plaintiffs to come within the "expressly authorized" exception to 28 U.S.C. § 2283.

In view of the disposition of the case set forth below, I find it unnecessary to determine whether the rule of Studebaker applies here except to note my skepticism that it does, in view of the substantial factual differences between the instant case and Studebaker.

■ This brings me to the determination of whether an injunction to stay the state court proceeding is authorized here as "necessary in aid" of this court's jurisdiction. I start from the significant proposition that exclusive jurisdiction to determine matters arising under the Securities Exchange Act of 1934 is vested in the federal courts. 15 U.S.C. § 78aa. It follows that, although the subject matter presented to the state court is for all practical purposes identical with the subject matter of the case before me, Vernitron has not had and cannot have the opportunity to present to the state court its claims under Sections 10(b) and 29(b) of the Securities Act.

In the state court proceeding Justice Helman has already held that, under New York Law even if Vernitron can prove a case of fraud, there is no ground for rescission of the contract, and that damages for substantially the full amount requested by Benjamin are payable. He has also found that the parties did not enter into the contract on the basis upon which Vernitron claims they both relied. In this regard, Justice Helman's conclusion that there was no multiple-of-earnings basis for the contract price is especially significant, since the underpinning of Vernitron's federal claim for rescission is based on its allegation that the sales price was premised on an earnings multiple. Vernitron claims that its damages have been so multiplied by Benjamin's alleged misstatement of earnings that rescission is the only adequate remedy.

If Benjamin is permitted to proceed to enter judgment on the basis of the state court's opinion, the question arises as to

whether Vernitron will be collaterally estopped from establishing its right, under federal law, to rescission and damages. It seems to me that in these circumstances Vernitron would be estopped from establishing its multiple-of-earnings/multiple-of-damages theory, and that the consequence of such estoppel would be to deprive this court of its exclusive jurisdiction to determine claims arising under the federal securities laws and to fashion an appropriate remedy under those laws. Connelly v. Balkwill, 174 F.Supp. 49 (N.D.Ohio 1959), aff'd 279 F.2d 685 (6th Cir. 1960); Kaufman v. Shoenberg, 154 F. Supp. 64 (D.Del.1954) (relating to *res judicata* as distinguished from collateral estoppel); Boothe v. Baker Industries, Inc., 262 F.Supp. 168 (D.Del.1966).

The situation here presented is similar to the one analyzed by the Court of Appeals of this Circuit in Greater Continental Corp. v. Schechter, 422 F.2d 1100 (2d Cir. 1970). Although that opinion did not involve the anti-injunction statute, the court dealt with the analogous situation of a stay of arbitration. Holding that a stay of arbitration would be appropriate in connection with securities fraud cases, the court observed (at 1103–1104):

> "The fraud issues involved in this case are within the view of Rule 10b–5, and the threat to Schechter's employment arises out of questions concerning the validity of the stock sale out of which the employment arose. Where, as here, there may be later conflicting claims of lack of jurisdiction on the part of the arbitrator, on the one hand, and of a collateral estoppel effect following the arbitrator's decision on the fraud issues, on the other, see James L. Saphier Agency, Inc. v. Green, 190 F.Supp. 713 (S.D. N.Y.1961), aff'd 293 F.2d 769 (2d Cir. 1961); cf. Liquifuels, Inc. v. Hess Oil & Chemical Co., 281 F.Supp. 596 (S. D.N.Y.1968), the court should consider whether the better course would not be to stay the arbitration proceed-

ing pending prompt federal litigation of the fraud issue (i. e., disposition of Continental's claims in this suit), with expedited trial.

> "In this and similar cases involving fraud questions under the securities acts of 1933 and 1934, where there is a *strong federal policy in favor of determining stock fraud questions in the federal courts,* see Wilko v. Swan, *supra* [346 U.S. 427, 74 S.Ct. 182, 98 L. Ed. 168], arbitration of the subsidiary employment issues which will necessarily determine the fraud questions also, may well be stayed." (Emphasis added.)

See also Wellington Computer Graphics, Inc. v. Modell, 315 F.Supp. 24 (S. D.N.Y.1970), in which Judge MacMahon observed that a final judgment in the state court relating to matters also covered by the federal securities laws "would collaterally estop relitigation here of issues common to both actions."

In reaching the conclusion that the anti-injunction statute does not bar the issuance of an order restraining further proceedings in the state case, I am not unmindful of the limitations placed by the Supreme Court in its opinion in Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers et al., 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970), on the granting of such injunctions. However, analysis of the facts of the instant case persuades me that it is not embraced within the limitations set forth in *Atlantic.* As Mr. Justice Black wrote, the facts in *Atlantic* established that

> "In short the state and federal courts had concurrent jurisdiction in this case, and neither court was free to prevent either party from simultaneously pursuing claims in both courts. [citing cases] Therefore the state court's assumption of jurisdiction over the state law claims and the federal preclusion issue did not hinder the federal court's jurisdiction so as to make an injunction *necessary* to aid

that jurisdiction." (Emphasis in original.)

Here, however, the state court does *not* have concurrent jurisdiction with the federal court as to the Securities Exchange Act claims, and cannot and did not rule on them. But the ruling which it has handed down could well act collaterally to estop Vernitron from establishing its federal claims in this court. Accordingly, in the present circumstances, unlike *Atlantic,* an injunction appears necessary in aid of this court's jurisdiction.

(B) *General Equitable Consideration*

■■■■ Having determined that the anti-injunction statute does not stand as a bar to granting the relief requested on this motion, it is necessary to apply the equitable standards by which the propriety of the issuance of an injunction is normally measured. The ordinary prerequisites to the granting of a preliminary injunction are a finding that the plaintiff will probably succeed on the merits of the case and that without such relief it will be irreparably damaged. Studebaker Corporation v. Gittlin, supra; Symington Wayne Corp. v. Dresser Industries, Inc., 383 F.2d 840 (2d Cir. 1967).

I find that the plaintiff here would be irreparably damaged if an injunction were not issued, since it would suffer the substantial risk of being collaterally estopped from presenting to this court its claims under the Securities Exchange Act.[1]

As to the probability of plaintiff's succeeding on the merits of the case, it must be conceded that Justice Helman's decision raises doubt. However, it is to be observed that Justice Helman did not, as he could not, rule on the plaintiff's causes of action under Sections 10(b) and 29(b) of the Act. Since, however, plaintiff in a federal securities case need not prove scienter, whereas he must do so under state law, the state court opinion does not compel the conclusion that Vernitron will fail to prove its case here. If the facts are as alleged by Vernitron (which is vigorously disputed by Benjamin), a violation of the Act would probably be established. That prospect appears to me to be sufficiently real to justify permitting Vernitron its day in federal court. This view is consistent with the attitude expressed by the Court of Appeals for this Circuit in Semmes Motors, Inc. et al. v. Ford Motor Company, 429 F.2d 1197 (1970). There, relying on the landmark opinion of Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953), the court said:

"In light of the imbalance of hardship, affirmance of the temporary in-

---

[1]. Benjamin contends that in taking seven months to bring this federal action Vernitron is guilty of laches such as to warrant a denial of preliminary relief. Certainly Vernitron's delay in instituting the federal suit is a relevant equitable consideration, but I am not persuaded that it *is of sufficient weight to warrant a* denial of a preliminary injunction if all the other factors by which the granting of preliminary relief is measured are satisfied. None of the cases cited by Benjamin as support for his proposition that delay on the part of a plaintiff constitutes grounds for refusal to grant a preliminary injunction is controlling here. All of those cases involved claims of trademark or copyright infringement in which it was found that the plaintiff's delay in seeking preliminary relief in itself proved that the damage suffered could not be serious. But claims of trademark or copyright infringement constitute a source of continuing damage, and it is quite proper to hold in such cases that a failure to seek preliminary relief may constitute an admission that the continuing damage is not serious. Here we are not dealing with a question of continuing damage. Furthermore, the failure to grant a preliminary injunction in the trademark or copyright infringement cases in no instance put the plaintiff out of court, whereas in the instant case failure to grant such preliminary relief would have precisely the result of *collaterally estopping* Vernitron from litigating its 10(b) and 29(b) claims.

junction does not depend on a holding that Semmes had demonstrated a likelihood of success; it is necessary only that Semmes 'has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation,' * * *."

Refusal to restrain the state court proceeding here would prevent Vernitron from having its day in federal court on federal claims of which federal courts have exclusive jurisdiction. Granting the stay will impose on Benjamin the necessity of proving his claims on their merits under the securities laws. An additional factor of damage to Vernitron in denying the injunction would be that it would have to pay to Benjamin over $1 million, which, if it prevails on its suit here, it will of course not be required to do. Accordingly, I find that the imbalance of hardship favors Vernitron. Since it has in my opinion also raised questions on the merits sufficiently serious to call for more deliberate investigation, I find that an injunction should be granted restraining Benjamin and his attorneys from further prosecution of the state court action. However, in view of the fact that Vernitron did take seven months to institute this federal court action, and that Justice Helman has rendered a decision adverse to Vernitron in the state court, the motion to be granted here will be conditioned upon Vernitron's furnishing a sufficient bond the amount of which will be determined by the court upon submission of appropriate documentation by the parties. The parties shall submit such material forthwith.

For the reasons and upon the conditions stated above the motion is granted.

Pursuant to Rule 52(a), this opinion constitutes the findings of fact and conclusions of law of the court.

Settle order on notice.

