**Theodore F. JACOBS, Plaintiff,**

**v.**

**Jerry M. TENNEY et al., Defendants.**

**No. 70 Civ. 3793.**

United States District Court,
S. D. New York.

Dec. 29, 1970.

---

24. *See* note 9 *supra.*

**938**

Liebman, Eulau, Robinson & Perlman, New York City, for plaintiff; Lewis M. Dabney, Jr., Herbert Robinson, New York City, of counsel.

Shea, Gallop, Climenko & Gould, New York City, for defendants Jerry M. Tenney, Omega Equities Corp., Shirley Tenney, Richard S. Hull, Jack Morganstern, Abraham Traub, Leonard Kingstone and Irving Schuyler; William Schurtman, Ira Postel, New York City, of counsel.

Markewich, Rosenhaus, Markewich & Friedman, New York City, for plaintiff Rosenblatt in consolidated action; Robert Markewich, New York City, of counsel.

Bennett Frankel, New York City, for plaintiff Hirtenstein in consolidated action.

M. Warren Troob, New York City, for defendant Harry Bank.

## OPINION

EDWARD WEINFELD, District Judge.

The welter of charges and counter-charges by attorneys against one another does not obscure the simple issue presented by plaintiff Jacobs' application for a preliminary injunction, in his words, "against further prosecution in the Supreme Court, State of New York, of a collusive 'give-away' settlement of certain stockholders' derivative actions which include some of the issues presented in the instant action"; also, to enjoin named defendants from interposing in this action any defense based on any judgment entered in the State Supreme Court pursuant to settlement or pursuant to any agreement not negotiated with plaintiff Jacobs or his counsel. Upon a complete review of the voluminous affidavits, the briefs, and the course and status of the various lawsuits centering about Omega Equities Corporation (hereafter "Omega") for whose benefit and that of its stockholders the various actions were allegedly instituted, I have concluded that plaintiff's application is without merit, that there is no showing of irreparable injury, or that plaintiff is without an adequate remedy at law, and accordingly it is denied in all respects.

At the outset it is observed that although plaintiff repeatedly refers to the stipulation of settlement of stockholders' actions now under consideration in the New York State Supreme Court as collusive and fraudulent, the charge is without evidential support. Also, plaintiff's attempt to equate his situation with that of the plaintiff's in Breswick & Co. v.

Briggs [1] must fail, since the factual pattern is so different as to afford no ground of comparison.

Plaintiff's suit, the eighth filed in this court by stockholders of Omega, asserts claims against its officers, directors and others. It is the last commenced in point of time.[2] It was instituted in the District Court of Delaware in what was clearly a maneuver to avoid consolidation with other actions pending here which had already been ordered consolidated. A fair reading of the opinion by District Judge Latchum,[3] in granting a motion to transfer plaintiff's suit to this district pursuant to 28 U.S.C., section 1404(a), leaves no doubt that plaintiff was engaged in just such a strategem.

In December, 1968, one Rosenblatt, represented by the law firm of Markewich, Rosenhaus, Markewich and Friedman, filed a derivative and representative action in the New York State Supreme Court, which was consolidated with another state court action commenced by one Skole, seeking substantially the same relief. Upon consolidation, Rosenblatt's attorneys were appointed general counsel by the state court. On January 9, 1969, they filed a parallel suit in this court; thereafter, up to May, 1969, six additional suits were commenced by other plaintiffs represented by their own attorneys. All these actions, except one,[4] have been consolidated for all purposes under the Rosenblatt caption, and Rosenblatt's attorneys were again appointed general counsel to conduct all proceedings pursuant to an order of Judge McLean entered July 7, 1969. Thereafter, a consolidated amended complaint was served in the Rosenblatt suit asserting claims against the principal officers and directors of Omega based upon alleged violations of various provisions of securities acts, and pendant claims were also asserted based upon alleged violation of Omega's common law rights. The claims were alleged in derivative and representative capacities.

General counsel in the Rosenblatt suits, commencing October 9, 1969, conducted extensive pretrial examination here and in California of individual defendants, including the alleged principal wrongdoer, and obtained discovery of voluminous documents. It was while this discovery process was well advanced that Jacobs, the movant here, commenced his action in the United States District Court of Delaware on October 28, 1969, ten months after the filing of the first Rosenblatt suit.[5] Plaintiff asserts that because of complete diversity in his action, he asserts common law claims that are not and cannot be included in the Rosenblatt consolidated federal suit, since such claims there must be restricted to those pendant on federal securities violations. Rosenblatt's counsel disputes this, contending that the consolidated

---

1. 135 F.Supp. 397 (S.D.N.Y.1955).

2. In all, eleven separate suits were commenced based upon substantially the same transactions. In addition to the eight commenced in this District, two were filed in the District of Delaware and one in the Northern District of California.

3. "There appears to be no serious question that the present action could have been brought in the Southern District of New York. * * *

     *    *    *    *    *

"The seven cases now pending in New York are based essentially on the same underlying course of conduct by Omega and other defendants as alleged in the present suit. There is substantial identity in the questions of fact and law raised in all the cases. In such circumstances, these actions should be brought together in a single forum for disposition." Jacobs v. Tenney, 316 F.Supp. 151, 168, 169 (D.Del.1970).

4. In which Gindin is plaintiff and who, together with his counsel, has approved the settlement.

5. The Rosenblatt suits were antecedent to an action filed by the Securities and Exchange Commission in the Central District of California, and the complaints are based substantially upon the same transactions and occurrences as underlie the Commission complaint. See Jacobs v. Tenney, 316 F.Supp. 151, 167 (D.Del. 1970).

state action asserts common law claims not includable in the federal action under pendant jurisdiction, but more important, Judge Latchum found Jacobs' contention in this respect erroneous.[6] After depositions and discovery had progressed in the state and federal suits, and, as is not unusual when facts are unearthed in such proceedings, counsel representing their respective clients conferred with a view towards an amicable disposition of the matters in controversy.

While this court does not pass upon the merits of the proffered settlement, which Jacobs' attorneys contend is inadequate and inequitable, there is, as already noted, not the slightest evidential support for their charge that it was fraudulently or collusively conceived; nor is there any basis for any claim that it was arrived at by. other than armslength and hard bargaining which extended through May, June and July, 1970. The stipulation of settlement was made public; it was filed in the Supreme Court of the State of New York; a copy was also filed with the Securities and Exchange Commission as part of Omega's 8–K report for the month of July.

█ Plaintiff's attorneys' original broad charges of fraud and collusion levelled against all attorneys who participated in the settlement appear to have been somewhat narrowed since the argument of the motion; the fraud now alleged is that the settlement was negotiated without notice to Jacobs or his attorneys. But the unchallenged fact is that general counsel, designated by both the state and federal courts, were unaware of the Jacobs suit until after the stipulation had been signed and a reference ordered to pass upon its fairness and adequacy. Entirely apart from this, plaintiff, who deliberately embarked on his own course when he filed his suit in the District Court of Delaware, and thus far is not a party to the consolidated suit, was not, upon the facts here presented, entitled to notice of the settlement negotiations. The record here discloses no significant action by his attorneys other than the commencement of this action in the District of Delaware and the procedures incident to service of process upon the defendants named therein; to date, no deposition or discovery procedure has been carried on; and except for this application to enjoin the state court from passing upon the settlement proposal, his suit appears to be in a quiescent state. In the light of the vast difference between the facts here and those in Breswick & Co. v. Briggs, any claim for "procedural decencies" is superficial.[7]

Upon the filing of the stipulation of settlement, a Justice of the State Su-

---

6. " * * * [P]laintiff argues that the *Rosenblatt* complaint 'does not include the common law and equitable causes of action' included herein. This contention is erroneous. The *Rosenblatt* complaint does contain a common law cause of action for 'wrongful waste and spoilation of Omega's assets,' although there is no specific relief requested in *Rosenblatt* for equitable relief subordinating the Omega stock of defendants to publicly held stock or for an injunction. Such relief could be granted by the New York Court pursuant to the general request in *Rosenblatt* for 'such other and further and different relief as may be just.'" Jacobs v. Tenney, 316 F.Supp. 151, 171 (D.Del. 1970).

7. 135 F.Supp. 397, 403 (S.D.N.Y.1955). The latter case must be considered in the context of its own compelling facts.

Breswick, described by the court as an "active" and perhaps "the most vigorous and successful" litigant, had obtained a preliminary injunction from a three-judge court, which was of substantial value in the furtherance of his derivative action. Four days thereafter, the defendants, after hurried negotiations with counsel in other derivative actions (selected by the defendants and not designated by the court as general counsel), from which negotiations the successful Breswick counsel were without "proper reason" excluded, concluded a settlement with the defendants. This "sharp maneuver," calculated to nullify the force of the Three-Judge Court's injunction, plus the discourtesy in ignoring the Breswick counsel, fully justified the issuance of injunctive relief to prevent the defendants from profiting by their own inequitable conduct.

preme Court, on July 30, 1970, appointed a referee to hear and to report as to the reasonableness, fairness and adequacy of the proposed settlement. Those hearings are now in progress. Jacobs' attorneys have been invited to participate therein, but have refused; so, too, they have made no application to intervene in the state proceedings. Another stockholder applied for and was granted intervention.

■ Under the order of reference, should the referee recommend acceptance of the settlement, written notice of any motion to confirm must be given to Omega stockholders, who then have an opportunity to be heard and to present any objection to the proposed settlement to the Justice who appointed the referee. And in the event the referee's report is confirmed and any stockholder, including plaintiff, is aggrieved, appellate review is available. In the event the state courts finally approve the settlement and, to consummate it, a motion to dismiss the federal consolidated suit is made, Jacobs and any other shareholder of Omega would be in a position to oppose, particularly since it was declared a class action by an order of Judge Mansfield entered in February, 1970. Moreover, the reach of the settlement would not extend to a portion of Jacobs' pending lawsuit, since he has included some defendants not named in the consolidated suits and who are not parties to the settlement. Also, should a state court judgment be advanced as a defense to the Jacobs suit, he is not precluded from challenging its validity upon grounds of fraud, collusion or other unconscionable conduct in its procurement.[8] Finally, the determination of the scope and effect of any state court judgment, whether urged in support of any motion to dismiss the Rosenblatt consolidated action or as a defense to the Jacobs suit, rests with the federal court. Under all the circumstances, the plaintiff has not made a showing of irreparable injury and no substantial reason has been advanced to stay the state court settlement proceedings.

■ But apart from the failure to establish the need for injunctive relief, the Anti-Injunction Statute[9] stands as a barrier. Jacobs' attempt to overcome the force of this statute because he obtained, under the sequestration and attachment laws of the State of Delaware, limited in rem jurisdiction with respect to certain shares of Omega appearing in the names of some nonresident individual defendants and also with respect to certain debts allegedly due from Omega to named defendants, is as unavailing in this instance as when he sought on the same ground to defeat transfer of his action to this district under section 1404 (a) of Title 28. Limited in rem jurisdiction was acquired, although, as Judge Latchum pointed out in ordering the transfer, in personam jurisdiction could readily have been obtained over each defendant by personal service.[10] The calcu-

8. Cf. Reiter v. Universal Marion Corp., 107 U.S.App.D.C. 6, 273 F.2d 820, 825 (1959), 112 U.S.App.D.C. 68, 299 F.2d 449 (1962).

9. 28 U.S.C. § 2283: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

10. "[T]he plaintiff could have brought this action in the Southern District of New York to vindicate rights protected by the Federal Securities laws since proper venue would have existed under section 27 of the '34 Act. The plaintiff could also have obtained personal service upon all the defendants by the 'long-arm' provisions of section 27. The same is true with respect to the instant case. However, the plaintiff here instead of obtaining personal service upon defendants resorted to Rule 4(e), F.R.Civ. P. and 10 Del.C. §§ 365 and 366 to obtain an order of sequestration and an order for substituted service. The in rem nature of the jurisdiction thus obtained is more limited in scope than he would otherwise be entitled to under section 27 of the '34 Act. * * *

* . * * * *

"A party should not be allowed to prevent the transfer of a case otherwise transferable, to another federal court by

lated and unnecessary in rem procedural maneuver by plaintiff should not be permitted to frustrate the clear Congressional policy against federal interference with state judicial proceedings,[11] particularly so when it is doubtful that any of the exceptions of section 2283 apply. Any claim by Jacobs with respect to those shares or debts upon which in rem jurisdiction was acquired may be advanced by him in this court if and when dismissal is sought of the consolidated action or a state court judgment is sought to be asserted in defense to his suit. Thus, neither exception of the Anti-Injunction Act "where necessary in aid of its jurisdiction, or to protect or effectuate its judgments" applies.

■ Nor does the case come within the third exception "as expressly authorized by Act of Congress." The present controversy is between private litigants centering about claims of alleged violations of the securities acts, as well as common law claims of alleged fiduciary misconduct, all denied by the alleged wrongdoers, with attorneys' fees surfacing at times as the central issue. In no true sense can it be said that enjoining the state court action is required to insure effective enforcement of the securities acts or SEC regulations for the protection of the investing public, or to prevent violations of its acts or regulations promulgated thereunder. Studebaker Corporation v. Gittlin,[12] upon which plaintiff strongly relies to sustain an exception here upon the ground the case is one "as expressly authorized by Act of Congress," is in-

apposite. There the activity enjoined was, upon its face, blatantly violative of the proxy rules promulgated under section 14(a) of the Securities Exchange Act of 1934. In view of the Congressional policy which underlies the grant of authority to the Securities and Exchange Commission to seek injunctions restraining violations, the suit, although brought by a private party and not by the Securities and Exchange Commission, was held to be within the expressly authorized exception to the Anti-Injunction Statute. Indeed, the court noted that had the injunction been brought by the Commission, section 2283 would not have blocked its way, and in the circumstances of the case, the suit by the plaintiff could be deemed "'a necessary supplement to Commission action' in providing the protection for investors contemplated by the statute, J. I. Case Co. v. Borak, 377 U.S. 426, 432, 84 S.Ct. 1555, 1560 [12 L.Ed.2d 423] (1964)."[13] Such is not the situation here, and the instant case affords no basis upon which to expand the exception in the Anti-Injunction Act, which the Supreme Court has warned "is not to be whittled away by judicial improvisation."[14] Under plaintiff's interpretation of *Studebaker*, every suit commenced in the federal courts charging violations of the SEC acts would automatically invoke the "as expressly authorized by an Act of Congress" exception and authorize the federal courts to enjoin state courts where the same issues are presented. In my view, the holding of the case does not permit such an expansive reading.[15]

deliberately resorting to the use of state enacted *in rem* procedures to acquire jurisdiction, particularly when the vindication of federally protected rights is sought." Jacobs v. Tenney, 316 F.Supp. 151, 169, 170 (D.Del.1970).

11. *Cf*. Amalgamated Clothing Workers of America v. Richman Bros., 348 U.S. 511, 514, 75 S.Ct. 452, 454, 99 L.Ed. 600 (1955).

12. 360 F.2d 692 (2d Cir. 1966).

13. *Id*. at 698.

14. Amalgamated Clothing Workers of America v. Richman Bros., 348 U.S. 511, 514, 75 S.Ct. 452, 454 (1955) ; *see also* Toucey v. New York Life Ins. Co., 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100 (1941). *Cf*. Greater Continental Corp. v. Schechter, 304 F.Supp. 325, 330 (S.D. N.Y.1969), appeal dismissed, 422 F.2d 1100 (2d Cir. 1970).

15. It is not without interest that in Vernitron Corp. v. Benjamin, S.D.N.Y., July 27, 1970, 317 F.Supp. 185, upon which plaintiff also strongly relies, Judge

In its most recent pronouncement on the Anti-Injunction Act the Supreme Court again has admonished on the need for preserving the general prohibitions contained therein:

"Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy. The explicit wording of § 2283 itself implies as much, and the fundamental principle of a dual system of courts leads inevitably to that conclusion." [16]

The motion is denied in all respects.

Lasker observed: "I find it unnecessary to determine whether the rule of *Studebaker* [Studebacker Corp. v. Gittlin, 2 Cir., 360 F.2d 692 applies here except to note my skepticism that it does, in view of the substantial factual dif-

ferences between the instant case and *Studebaker*."

16. Atlantic Coast Line R. R. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 297, 90 S.Ct. 1739, 1748, 26 L.Ed. 2d 234 (1970).