## SECURITIES AND EXCHANGE COMMISSION v. OKIN.

### No. 135.

Circuit Court of Appeals, Second Circuit.

Jan. 4, 1943.

Milton V. Freeman, of Philadelphia, Pa., John F. Davis, Sol., and Charles B. Collins, Robert B. Healey, and Arnold R. Ginsburg, Attys. for Securities and Exchange Commission, all of Philadelphia, Pa. (Irving J. Galpeer, of New York City, of counsel), for appellant.

Samuel Okin, of New York City, appellee, pro se.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The Securities and Exchange Commission appeals from a judgment dismissing its complaint for insufficiency in law upon

its face. The substance of the allegations was as follows. On September 16, 1942, the Electric Bond and Share Company, a corporation subject to the Commission's jurisdiction, filed with it "a notice, proxy statement and form of proxy in connection with an annual meeting of stockholders scheduled to be held on October 14, 1942"; and, on September 24, 1942, Okin, the defendant, filed copies of a letter to shareholders asking them not to sign any proxies for the company, and to revoke any which they might have already signed. This letter was "false and misleading" because in it the defendant declared that "the preferred dividend requirements" of the company had "already caused a deficit of approximately $1,250,000 this year and if the conditions remain this deficit will be approximately $2,500,000 by the end of this year." The fact was on the contrary that there was no deficit but a "net income" of $2,661,000 for the first six months of the year and an earned surplus of nearly $62,-000,000. The letter further omitted to state facts "necessary to be stated in order to make the statements made therein not false or misleading." These omissions were four in number. The first was that, although in the letter the defendant said that he had succeeded in preventing a loss to the company which would have resulted from the attempted subordination of one of its claims against another company, he did not add that the question was still undecided and still sub judice. The second omission was that, although in the letter he said that he had brought suit against the company and its "management," he did not add that the suit had theretofore been unsuccessful, and that it would not add to its assets anyway, but would merely change the priority of claims against the company. The third omission was that, although in the letter he said that he owned 9000 shares, he did not add that he had bought them for $9,000. The fourth and ·last omission was that, although in the letter he told the shareholders not to sign proxies and to revoke any proxies they might have given, so as to prevent a quorum at the meeting of October 14, 1942, he did not add that if that meeting were adjourned, he meant to solicit proxies by means of which he should indirectly get himself elected an officer of the company. By using the mails to distribute copies ·of this letter the defendant violated the Commission's regulations and he should be enjoined. The judge dismissed the complaint because he thought that the letter was not a solicitation of proxies within § 12(e) of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79*l*(e), and that unless it was, it was not subject to regulation by the Commission.

■ Although § 12(e) subjects to the Commission's regulations the solicitation not only of a proxy, but of any "power of attorney, consent, or authorization regarding any security," it would be going far to say that the letter in controversy was a solicitation of any of these. If the complaint had not alleged that the defendant intended to follow it up by actually soliciting proxies, should the proposed meeting be adjourned, we should indeed have great doubt whether it stated a cause of action. But it does so allege; it says in substance that the letter was a step in a campaign whose purpose was to get himself elected an officer of the company; it was to pave the way for an out-and-out solicitation later. Therefore the complaint presents the question whether the power of the Commission under § 12(e) is limited to the regulation of a "proxy, power of attorney, consent, or authorization," strictly as such; or whether it extends to any other writings which are part of a continuous plan ending in solicitation and which prepare the way for its success. We have no doubt that the power extends to such writings; were it not so, an easy way would be open to circumvent the statute; one need only spread the misinformation adequately before beginning to solicit, and the Commission would be powerless to protect shareholders. The earlier stages in the execution of such a continuous purpose must be subject to regulation, if the purpose of Congress is to be fully carried out.

■ Since the Commission had power under § 12(e) to regulate the contents of the letter, we are to ask whether it violated Rule X-14A-5, which forbids solicitation by means of "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading * * * or omits to state any material fact necessary in order to make the statements therein not false or misleading." As a positive misstatement, violative of the first clause of this Rule, the complaint selected what we quoted above: "the preferred dividend requirements * * * have already caused a deficit of approximately $1,250,000"; and

alleged that this was untrue because there was no "deficit," the "net income \* \* \* for the first six months of 1942" being $2,661,000 and "the earned surplus," nearly $62,000,000. From two reports to shareholders annexed to one of the affidavits it appears that the net earnings for the first six months of 1942 were $2,661,000 and the "preferred dividend requirements" were $3,893,000. Apparently the defendant was relying upon the fact that the net income as shown in the reports was therefore about $1,250,000 short of the sum necessary to pay the year's dividends. That is not, however, what he said; if there was as large a surplus as the complaint alleges and the reports state, the payment of the dividends—if in fact they were paid, which does not appear—had not "already caused a deficit of $1,250,000," or of any sum whatever. Companies may, and often do, declare preferred and common dividends out of past earnings in years, the income of which has not been large enough to pay them. The defendant may not have known that such payments do not cause a "deficit," but his statement, if the facts were as alleged, was none the less untrue, and should not have been made. We also believe that the allegations of "false and misleading omissions" were properly alleged to raise the issue whether they violated the second clause of Rule X-14A-5. The only one of the four "omissions" open to doubt was the third, which consisted of the failure to disclose what the defendant paid for his shares; but that we will not now pass upon; it may depend upon why he bought his shares at the figure he did. We will not now decide whether a person buying into a company, merely to become an officer, can never be required to disclose what stake he has in it, if he chooses to go out after proxies. The argument that Rule X-14A-6(b) gave the defendant the privilege of sending out anything he chose, false or true, needs no discussion.

The last question is whether a "case or controversy" continued to exist after the date of the shareholders' meeting—October 14, 1942—, or whether the appeal thereafter became moot. That date has long since passed and the controversy passed with it, unless it still concerns something which may happen. It does, because of the allegation that the defendant contemplated the solicitation of proxies later. The complete allegation as to why the fourth omission was "misleading" was as follows: "in the event the stockholders' meeting is adjourned the defendant intends to solicit proxies for the election of a slate of directors to be named by a stockholders' committee which he proposes to form, and that if such slate of directors is elected, the defendant expects to be named an officer of Electric Bond and Share Company." If the Commission can prove this, it may be able not only to secure from the district court an injunction against further publication of the "false" or "misleading" assertions, but an affirmative direction that before the defendant proceeds to solicit any proxies, he shall correct the misinformation which he has already spread among the shareholders. Although we do not know whether the meeting of October 14 was adjourned, on this record we have no right to assume that it was not; and, even if it was not, it does not necessarily follow that the defendant has abandoned his effort to become an officer of the company by the aid of the seed already sown in the shareholders' minds.

Judgment reversed.

CHASE, Circuit Judge (dissenting).

I find myself unable to put so broad an interpretation upon the allegations in the complaint as is needed to make agreement with my brothers possible. Moreover the appeal seemingly is moot and should be dismissed for that reason.