**TRANS WORLD CORPORATION,
Plaintiff,**

v.

**ODYSSEY PARTNERS, et al.,
Defendants.**

**No. 83 Civ. 1939 (MEL).**

United States District Court,
S.D. New York.

April 20, 1983.

---

Wachtell, Lipton, Rosen & Katz, New York City, for plaintiff.

Weil, Gotshal & Manges, New York City, for defendants Odyssey Partners, Jack Nash, Leon Levy and Lester Pollack.

Davis, Polk & Wardwell, New York City, for defendant S.G. Warburg & Co. Ltd.

Milbank, Tweed, Hadley & McCloy, New York City, for defendants Bishopsgate Trust PLC, Hambros Inv. Co. A.G., Hambros Inv. Trust PLC, Kavilco, Inc., MR Inv. Associates, NR Inv. Associates, and Royston Inv. Co.

Rogers & Wells, New York City, for defendants Oppenheimer Holdings, Inc., Oppenheimer & Co., Inc. and Oppenheimer Capital Corp.

Cole & Deitz, New York City, for defendants Oppenheimer Fund, Oppenheimer Special Fund, Oppenheimer Option Income Fund, Hamilton Funds, Inc., and Centennial Growth Fund.

White & Case, New York City, for defendant Electra Inv. Trust PLC.

LASKER, District Judge.

Trans World Corporation (Trans World) instituted this action for injunctive and declaratory relief on March 11, 1983, alleging that the defendants, in the course of activities preceding Odyssey Partners' formal proposal of a non-binding shareholder resolution to be voted upon at Trans World's annual shareholder meeting on April 27, 1983, have violated Sections 13(d) and 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78m(d) and 78n(a) and the rules and regulations promulgated pursuant to those sections. The shareholder resolution, as presented in proxy materials prepared by defendant Odyssey Partners ("Odyssey"), would request the Board of Directors "to develop a program to separate Trans World's primary subsidiaries by spinning them off to Trans World's stockholders as independent public companies or by their sale."[1] All defendants except Eugene S. Rosenfeld move to dismiss the complaint under Fed.R.Civ.Pr. 12(b)(6) and 9(b); certain defendants (Bishopsgate Trust PLC, Hambros Investment Company, A.G., Hambros Investment Trust PLC, Kavilco, Inc., MR Investment Associates, NR Investment Associates, Royston Investments Co., and S.G. Warburg & Co., Ltd.) also move to dismiss the complaint under Fed.R.Civ.Pr. 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue.

## I.

### The Actors

Trans World is a diversified holding company which through its five primary subsidiaries is engaged in airline services (Trans World Airlines, Inc.), hotel services (Hilton International Co.), food services (Canteen Corporation and Spartan Food Systems, Inc.), and real estate services (Century 21 Real Estate Corporation).

Defendants Jack Nash, Leon Levy, and Lester Pollack are the general partners of Odyssey; defendant Bert Fingerhut is a limited partner. Oppenheimer & Co., Inc. is a registered broker-dealer; Nash, Levy and Pollack are "controlling persons" of Oppenheimer & Co., Inc. within the meaning of Section 20 of the Exchange Act. Fingerhut is the head of research for Oppenheimer & Co., Inc. Oppenheimer Holdings, Inc. is a holding company which "directly or indirectly" owns a variety of companies including Oppenheimer & Co., Inc. Oppenheimer Capital Corp. is a registered investment advisor. (Complaint, ¶¶ 10–17).

Oppenheimer Fund, Inc., Oppenheimer Special Fund, Inc., Oppenheimer Option Income Fund, Inc., Hamilton Funds, Inc., and Centennial Growth Fund, Inc. (together the "Funds") are registered investment companies. The complaint refers to Oppenheimer & Co., Inc., Oppenheimer Holdings, Oppenheimer Capital Corp., and the Funds as the

---

1. Proxy Materials, dated March 31, 1983, at p. 1 (Odyssey's proxy materials were presented to the Court as an exhibit during oral argument).

"Oppenheimer Entities," and states that the registered investment advisor of each of the Funds is an affiliate of the Oppenheimer Entities. (Complaint, ¶¶ 18–23).

Defendants Bishopsgate Trust PLC, Electra Investment Trust PLC, Hambros Investment Company A.G., Hambros Investment Trust PLC, Kavilco, Inc., MR Investment Associates, NR Investment Associates, Royston Investments Co., S.G. Warburg & Co., Ltd., and Eugene S. Rosenfeld are companies, partnerships or individuals who joined Hepplewhite Limited Partners, a partnership set up in or about August 1982 by Odyssey's predecessor company, Oppenheimer & Co. (Complaint, ¶ 34). These defendants are referred to in the complaint as the "Undisclosed Group Members," apparently because Trans World alleges that they are part of a group within the meaning of Section 13(d) of the Exchange Act. For the purpose of consistency, we adopt this appellation in the following discussion.

## II.

### The 14(a) Claim

Count I of the complaint alleges violations by all of the defendants of Section 14(a) of the Exchange Act and of Rules 14a–3 and 14a–6, 17 C.F.R. §§ 240.14a–3 and 240.14a–6.[2] It alleges that the defendants, without furnishing Trans World shareholders with the information required by Rule 14a–3 and without filing their solicitation materials in advance with the Securities and Exchange Commission ("SEC") as required by Rule 14a–6, have engaged in a plan to solicit proxies from Trans World shareholders.[3]

As defined in Rule 14a–1, 17 C.F.R. § 240.14a–1, the term "solicitation" includes, *inter alia,* any "communication to security holders under circumstances reasonably calculated to result in the procurement, withholding or revocation of a proxy." As interpreted by the Second Circuit, a communication to stockholders may constitute a proxy solicitation, even if it does not contain an express request for a proxy, if it is "part of 'a continuous plan' intended to end in solicitation and to prepare the way for success." *Studebaker Corporation v. Gittlin,* 360 F.2d 692 (2d Cir. 1966), *quoting SEC v. Okin,* 132 F.2d 784 (2d Cir.1943). The allegations of the complaint which according to Trans World state a cause of action for unlawful proxy solicitation under the standards described above fall into three main groups:

First, the complaint alleges that in August 1982, Oppenheimer & Co., the predecessor of Odyssey, formed Hepplewhite Limited Partnership ("Hepplewhite") "as the vehicle to solicit numerous holders of Trans World stock to support [the] objective of precipitating a break-up of Trans World." (Complaint, ¶ 50). Oppenheimer & Co. was the initial general partner of Hepplewhite, and Pollack was Hepplewhite's initial limited partner. Between August and November 1982, "numerous investors were solicited by defendants," and ten limited partners—the Undisclosed Group Members—joined Hepplewhite (¶ 55). During this time, Oppenheimer & Co. was reconstituted as Odyssey; in November 1982, Hepplewhite was also formally reconstituted, and a new partnership agreement was executed by Odyssey and the

**2.** Rule 14a–3, 17 C.F.R. § 240.14a–3, states in part:

"(a) No solicitation subject to this regulation shall be made unless each person solicited is concurrently furnished or has previously been furnished with a written proxy statement containing the information specified in Schedule 14A (§ 240.14a–101) or with a written proxy statement included in a registration statement filed under the Securities Act of 1933 on Form S–15 (§ 239.29) and containing the information specified in such form."

Rule 14a–6, 17 C.F.R. § 240.14a–6, requires that copies of written material to be used in soliciting proxies be filed and pre-cleared with the SEC prior to their distribution to security holders.

**3.** As indicated above, Odyssey has recently presented formal proxy solicitation materials to Trans World's shareholders and has obtained clearance for those materials from the SEC; the complaint does not refer to these materials, but rather to events pre-dating the filing of the. complaint.

Undisclosed Group Members. The Hepplewhite partners contributed all their Trans World stock to Hepplewhite, and Hepplewhite thereafter purchased additional shares of Trans World stock (approximately 157,200). Hepplewhite was dissolved in December 1982. (Complaint, ¶¶ 49–56).

The second set of allegations upon which Trans World bases its solicitation claim concerns alleged efforts by the "defendants" to publicize their proposal that Trans World be broken up into independent companies. The complaint states that in late 1982 "defendants both communicated the 'break-up' concept they had decided to promote to various members of the financial community, the financial press and Trans World itself and engaged in calculated refusals to deny rumors concerning their intentions when queried by the press." (Complaint, ¶ 57). Third, the complaint recounts that Hepplewhite filed a Schedule 13(D) in December 1982 which announced that Hepplewhite had acquired more than 5% of Trans World's stock, that the stock had been acquired pursuant to Hepplewhite's plan to propose the separation of Trans World's operating subsidiaries into independent companies, and that Hepplewhite was being dissolved and its shares distributed to its partners. The 13(D) also stated that Hepplewhite's partners reserved the right to continue to advocate the separation program outlined in the 13(D) statement. (Complaint, ¶¶ 65–67). According to Trans World, the statements in Hepplewhite's 13(D) constituted proxy solicitations with respect to the defendants' plan to propose the separation of Trans World's subsidiaries.

■ Although the adequacy of the above allegations as to each group of defendants is discussed below, it is to be noted at the outset that the complaint's repeated references to actions of the "defendants," without differentiation among the various defendants, is unacceptable. *E.g.,* Complaint, ¶ 57 ("defendants proceeded to orchestrate the publicity they desired .... [D]efendants ... communicated the 'break-up' concept they had decided to promote to various

members of the financial community, the financial press and Trans World itself ..."). Whether the standard applicable to claims under Section 14(a) is the Rule 9(b) standard requiring particularity in allegations of fraud, or simply the notice standard of Rule 8, each defendant is entitled to know precisely what Trans World is alleging as to him or it. Accordingly, Count I of the complaint will be dismissed unless Trans World amends the complaint so as to specify which of the actions relating to Trans World's 14(a) claim now charged to the "defendants" generally are charged to particular defendants individually.

■ As to those defendants who, upon amendment of the complaint, are specifically charged with having communicated the disaggregation concept to the financial community and press in an effort to influence shareholder opinion, the 14(a) claim will be deemed sufficient on the authority of *SEC v. Okin, supra,* and *Studebaker Corp. v. Gittlin, supra.* However, the allegation that any defendant simply refused to comment to the press on rumors concerning Trans World, without more, plainly does not state a claim for relief under Section 14(a).

■ In addition, no claim for relief under Section 14(a) as to any defendant is stated by the allegation that Hepplewhite's 13(D) statement, filed in December 1982, announced Hepplewhite's intentions with respect to Trans World stock. (Complaint, ¶ 67). According to Trans World's reasoning, a statement which it would be unlawful to omit from a Schedule 13(D) can nevertheless give rise to liability under 14(a) if it is included in the Schedule 13(D) without first being filed with the SEC as proxy solicitation material. Trans World cites no authority for this proposition, and it is rejected. Trans World further alleges, however, that the Schedule 13(D)'s "reservation of rights" by Hepplewhite's partners was not required by 13(D), and constituted an attempt to influence Trans World shareholders in a planned proxy battle. Although we have reservations about the sufficiency of this allegation as well, a plaintiff is entitled to the benefit of the doubt on a

motion to dismiss, and accordingly the allegation is not ruled out as a possible basis for 14(a) liability. With these general points established, the sufficiency of the Count I allegations as to different groups of defendants is discussed below.

### A. Defendants Levy, Nash, Pollack, Fingerhut, and Odyssey

█ The complaint alleges that Odyssey and Odyssey's predecessor, Oppenheimer & Co., solicited Trans World shareholders to join Hepplewhite for the purpose of facilitating actions supporting the disaggregation of Trans World. In view of the standard set forth in *SEC v. Okin, supra,* and *Studebaker Corp. v. Gittlin, supra,* we cannot say that Trans World will clearly be unable to prove any set of facts showing that the solicitation of partners in Hepplewhite constituted a violation of Section 14(a). *See, Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957). In addition, as noted above, the claim that Hepplewhite's Schedule 13(D) contained unnecessary material intended to advance these defendants' planned proxy solicitation marginally provides another ground for sustaining the sufficiency of the 14(a) count. The motion to dismiss Count I as to the above-named defendants is therefore denied, except to the extent that Trans World will be required to amend its complaint to identify more specifically which allegations are intended to apply to each defendant, as discussed above.

### B. The Undisclosed Group Members

█ The allegations that Odyssey or its predecessor, Oppenheimer & Co., solicited limited partners to join Hepplewhite, cannot be construed to state a claim for relief under Section 14(a) against the Undisclosed Group Members, since they are alleged to have joined Hepplewhite as a result of this solicitation, not to have undertaken the solicitation themselves. Therefore, unless the complaint is amended so as to identify the Undisclosed Group Members as being among the defendants who communicated with the press and the financial community in an effort to influence Trans World shareholders with respect to the disaggregation proposal, the only factual allegation supporting a solicitation claim against these defendants is that they participated in a solicitation effort through the statement in Hepplewhite's Schedule 13(D) reserving their rights to take future action with respect to proposals for the break-up of Trans World. This action alone cannot be construed as a step in a continuous plan intended to end in a proxy solicitation, because there are no factual allegations of any actions taken by the Undisclosed Group Members, since the dissolution of Hepplewhite in December 1982, which indicate that they continued to be involved in soliciting shareholder support for Odyssey's proposed shareholder resolution. Accordingly the motion to dismiss Count I as to the Undisclosed Group Members will be granted unless Trans World can in good faith amend the complaint as outlined above so as to specify actions by each of the Undisclosed Group Members which will support a claim of proxy solicitation.

### C. The Funds

█ There is no allegation that the Funds were partners in Hepplewhite, nor does the complaint contain any specific factual allegation of actions taken by the Funds which could be construed as amounting to proxy solicitation. Nevertheless, ¶ 52 of the complaint states that

> "Hepplewhite was established as a vehicle for the specific [purpose] of (i) facilitating the joint action of defendants Odyssey, Nash, Levy, Pollack, Fingerhut, the Oppenheimer Entities and the Undisclosed Group Members in respect to their future holdings of Trans World stock...."

The only basis upon which the Funds (which in the terminology of the complaint are part of the "Oppenheimer Entities") are alleged to be connected with Hepplewhite and thereby (arguably) with proxy solicitation activity attributable to Hepplewhite is set forth in the following paragraph:

"Odyssey ... controlled all the Trans World stock holdings of ... the Oppenheimer Entities as a result of the positions of responsibility and influence enjoyed by Odyssey's partners with the Oppenheimer Entities...."

(Complaint, ¶ 53). The fact, which on this motion must be accepted as true, that Odyssey's partners enjoyed a position of influence with the Oppenheimer Entities, does not without more make Odyssey's actions the actions of the Funds, and certainly does not render the allegations sufficient to state a 14(a) claim against the Funds. The only remaining factual allegation linking the Funds to actions arguably proscribed by Section 14(a) is the allegation that the "defendants" communicated with the financial community and press in an effort to influence shareholders. These allegations are insufficient and Count I of the complaint will be dismissed as against the Funds unless Trans World can in good faith amend the complaint to state a proper claim for proxy solicitation against the Funds.

*D. Oppenheimer & Co., Inc., Oppenheimer Capital Corp., and Oppenheimer Holdings, Inc.*

The analysis set forth above with respect to the Funds applies equally to these three defendants, because they, like the Funds, are connected to alleged proxy solicitation efforts only by virtue of the "influence" exercised over them by Odyssey's partners. The conclusions set forth with respect to the Funds are therefore adopted as to these three defendants as well.

*E. Irreparable Harm*

The defendants argue that, even if the complaint otherwise states a cause of action under Section 14(a), the 14(a) claim must be dismissed because Odyssey's shareholder resolution is merely precatory, and the complaint's allegations therefore cannot form the basis for the requested injunctive relief because Trans World cannot demonstrate that irreparable injury will result from passage of the resolution. In support of their position defendants cite *Sisters of the Precious Blood, Inc. v. Bristol-Myers Co.,* 431 F.Supp. 385 (S.D.N.Y.1977). In that case,

which also involved a precatory resolution, Judge Pollack held that because management would have been free to ignore the resolution regardless of whether it passed, the challenged proxy solicitation was not "an essential link in the accomplishment of some corporate action," and the plaintiff therefore had not alleged the "transaction causation" essential to a 14(a) claim. 431 F.Supp. at 387; *see Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374 (2d Cir.1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975).

█ We doubt, however, that Judge Pollack's decision can properly be read as holding that violations of 14(a) relating to a precatory resolution can never provide a predicate for injunctive relief. The shareholder resolution at issue in *Sisters of the Precious Blood* did not recommend a change in the management or structure of the corporation, but instead simply requested that the Board issue an informational report. In contrast, in the case at hand it is reasonable to assume, as Trans World contends, that a showing of substantial shareholder support for Odyssey's resolution might well—and indeed properly should—exert substantial influence on management policies. We therefore conclude that if it were demonstrated that the defendants violated Section 14(a) in soliciting support for Odyssey's resolution, the possibility of injunctive relief would not be precluded as a matter of law simply because the resolution is precatory rather than binding.

### III.

*The 13(D) Claims*

*A. Counts II and V*

Count II alleges that all defendants have violated Section 13(d) of the Exchange Act, 15 U.S.C. § 78m(d)(1), by failing to file a Schedule 13(D) identifying themselves as members of a group seeking to bring about the disaggregation of Trans World. Count V alleges that all defendants other than the Oppenheimer Entities comprise such a group and have violated Section 13(d) by

failing to file a Schedule 13(D) identifying themselves as a group.

■ Rule 13d–1(a), 17 C.F.R. 240.-13d–1(a), requires that any "person" who acquires "beneficial ownership" of more than 5% of voting equity securities registered pursuant to Section 12 of the Exchange Act must, within ten days following the acquisition, file a Schedule 13(D). Under Section 13(d)(3) of the Exchange Act, when two or more persons act as a group for the purpose of "acquiring, holding, or disposing of" securities, the group is deemed a "person" for the purpose of the filing requirements of Section 13(d). In order to comprise a "group" for Section 13(d) purposes there must be an agreement between the members of the group to act together "in furtherance of a common objective." *Wellman v. Dickenson,* 682 F.2d 355, 363 (2d Cir.1982); *see Corenco Corp. v. Schiavone & Sons Inc.,* 488 F.2d 207, 217–18 (2d Cir.1973). The filing requirements of Section 13(d) are intended "to alert the marketplace to every large, rapid aggregation or accumulation of securities, regardless of technique employed, which might represent a potential shift in corporate control...." *GAF Corp. v. Milstein,* 453 F.2d 709, 717 (2d Cir.1971), *cert. denied,* 406 U.S. 910, 92 S.Ct. 1610, 31 L.Ed.2d 821 (1972).

■ The complaint's allegations duly recite the existence of these elements of a Section 13(d) claim. *E.g.,* ¶ 63 ("defendants ... were, as a result of the interrelationships and contracts, agreements and understandings between and among these defendants with respect to their Trans World stock, a group"); ¶ 42 ("defendants' true purpose most definitely does involve an attempt to affect or influence the control of Trans World"). However, the complaint contains virtually no allegations specifying the basis for these conclusory statements. Although the complaint describes the formation of Hepplewhite, in which Odyssey and the Undisclosed Group Members were partners, the complaint is empty of facts indicating the basis for Trans World's claim that joint action by these defendants continued after Hepplewhite announced its dissolution in December 1982. Nor is there any allegation showing the basis for Trans World's conclusion that the Oppenheimer Entities were part of a Section 13(d) group with the other defendants, except the allegation that Odyssey's partners enjoyed unspecified "positions of responsibility and influence" with the Oppenheimer Entities. (Complaint, ¶ 53). As the Court of Appeals has ruled, the unadorned allegation that defendants are acting as a group is not adequate to sustain a Section 13(d) claim. *Segal v. Gordon,* 467 F.2d 602, 608 (2d Cir. 1974). Accordingly, Counts II and V of the complaint will be dismissed under Fed.R. Civ.Pr. 9(b) unless the complaint is amended to allege with adequate particularity the actions or conduct in which the defendants have engaged indicating that they are a group for Section 13(d) purposes. Particularization may include facts alleged on information and belief but, in such a case, Trans World must indicate the source of its information and the reason for its belief.

## B. Count III

Count III alleges that Oppenheimer & Co., Inc., Oppenheimer Holdings Inc., Oppenheimer Capital Corp. and the Funds violated Section 13(d) by filing a false and misleading Schedule 13(G). A Schedule 13(G) may be filed in lieu of a Schedule 13(D) by a person beneficially owning 5% or more of an issuer's securities if the securities have been acquired in the ordinary course of business and "not with the purpose nor with the effect of changing or influencing the control of the issuer, nor in connection with or as a participant in any transaction having such purpose or effect." Rule 13d–1(b)(1)(i), 17 C.F.R. § 240.13d–1(b)(1)(i). The complaint alleges that the 13(G) filed on February 10, 1982, and amended on February 26, 1982 and March 2, 1983, contained false statements that the defendants in question were holding their Trans World stock as passive investors only, when in reality these defendants were acting as part of a group composed of Odyssey and the other defendants which was acquiring Trans World stock with the intention of

causing the eventual breakup of Trans World. (Complaint, ¶¶ 44–48, 74, 100–104).

▇ The false-filing claim set forth in Count III is premised on the same theory discussed above with respect to Counts II and V—that is, that the Oppenheimer Entities are participants in Odyssey's plan to bring about the disaggregation of Trans World. (Complaint, ¶ 48). Count III is therefore subject to the same objection noted previously; the complaint does not allege with sufficient particularity how the Oppenheimer Entities were involved in Odyssey's plan, apart from the unspecified "positions of responsibility" allegedly held by Odyssey's partners with the Oppenheimer Entities. Accordingly, Count III will also be dismissed unless the complaint is amended to allege with adequate particularity the circumstances indicating that the Oppenheimer Entities were participants in Odyssey's plan with respect to Trans World.

### C. Count IV

Count IV alleges that Odyssey, Nash, Levy, Pollack, Fingerhut and the Undisclosed Group Members made false and misleading statements in the Schedule 13(D) filed by Hepplewhite in December 1982. In that document Hepplewhite announced that it had acquired more than 5% of Trans World's stock, that the stock had been acquired with the purpose of implementing a plan to break up Trans World, and that Hepplewhite was being dissolved and its members no longer intended to act as a group with respect to their Trans World stock.

▇ To the extent that Count IV's allegations of falsity are based on the claim that the above-named defendants comprised a group for Section 13(d) purposes prior to the date disclosed in the Schedule 13(D), and that they intended to continue acting as a group for Section 13(d) purposes after the dissolution of Hepplewhite, the complaint again suffers from a lack of specific allegations regarding the circumstances of the alleged joint agreement or actions. Trans World must allege such facts if it wishes to pursue these claims against the defendants named in Count IV.

As to the other allegations of false statements contained in Hepplewhite's Schedule 13(D), not involving the theme that the defendants acted as a group, the allegations of the complaint are sufficiently specific as they stand.

### IV.

### *The 12(b)(2) and 12(b)(3) Motion*

Certain of the Undisclosed Group Members move to dismiss on the ground that Trans World has improperly invoked the provisions of Section 27 of the Exchange Act, 15 U.S.C. § 78aa, which provides for world-wide service of process in an action alleging a common scheme of acts or transactions to violate the Exchange Act, and declares that venue is properly laid in any district where any material act in furtherance of the scheme occurred.

As is often the case with such motions, the defendants' objections to the use of Section 27's provisions are closely related to the merits of the case: the movants challenge the claim that their involvement in the alleged common scheme is sufficient to warrant invoking Section 27. Because the issue thus drawn cannot be determined on the basis of the pleadings, the motion is denied without prejudice.

In sum:

As to Count I, the motion to dismiss will be granted as to all defendants unless within seven days of the date of this decision the complaint is amended so as to particularize the allegations in light of the discussion above.

Counts II—V will be dismissed as against all defendants unless within seven days from the date of this decision the complaint is amended to allege with adequate particularity the basis for the claim that the defendants have acted as a group with respect to Trans World's stock.

The motion to dismiss for lack of personal jurisdiction and improper venue are denied without prejudice.

It is so ordered.