NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0608n.06

No. 14-3999

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 27, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| GAS NATURAL INC., | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| RICHARD M. OSBORNE, | ) | DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

**BEFORE: SILER, COOK, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** Gas Natural Inc. brought this action to enjoin its former chief executive officer (CEO), chairperson, and board member Richard M. Osborne from soliciting its shareholders without complying with Section 14 of the Securities Exchange Act of 1934 (Act), 15 U.S.C. § 78n, and related Securities and Exchange Commission (SEC) regulations. *See* 17 C.F.R. §§ 240.14a-1 to -21 (Regulation 14a). The district court determined that Osborne's letters to Gas Natural's shareholders were solicitations that were required to be registered with the SEC in accordance with Regulation 14a, and further found that Osborne intended to wage a proxy contest to regain his position on Gas Natural's board of directors. The court enjoined Osborne from sending additional letters to shareholders without first registering them with the SEC. We **VACATE** the injunction and **REMAND** for further proceedings.

**I.**

Gas Natural is a publicly traded holding company that operates natural-gas distribution companies serving approximately 73,000 customers in seven states. (PID 1, 261.) On May 1,

2014, Gas Natural's board of directors removed Osborne as chairperson and CEO of the company. (PID 1, 215.) The board also removed Osborne from the slate of directors it had nominated for election to the board at the July 30, 2014 annual shareholder meeting. (PID 35.)

Following removal from his offices, Osborne sent a letter, dated June 12, 2014, to Gas Natural's secretary requesting a copy of the list of shareholders so that he could "solicit their support to be reinstated to the Board"; Gas Natural provided the list a few days later. (PID 36, 40.) Osborne also filed suit against Gas Natural in state court seeking to enjoin Gas Natural from holding the shareholder meeting, but Osborne voluntarily dismissed the suit on July 15, 2014, in light of a tentative settlement. (PID 224, 282, 289.) Osborne refiled the suit on July 28, 2014, after Gas Natural allegedly breached the settlement's terms. (PID 291, 303.) The refiled action sought to void—rather than enjoin—the imminent July 30, 2014 election. (PID 305.)

In his first letter to shareholders, dated July 9, 2014, Osborne criticized Gas Natural's management and "ask[ed] for [the shareholders'] help in running these greedy individuals out of our company." (PID 44.) He advised them that they would receive additional letters from him.[1]

---

[1] The letter in full reads:

> Dear Shareholder,
>
> My name is Richard M. Osborne, former Chairman and CEO of Gas Natural Inc. After saving the company from near bankruptcy, I was tossed out because the attorney of our Derivative Lawsuit told our board members it would be the easiest way to settle. Mark Kratz, Gas Natural's current Securities Attorney who represented me personally for 35 years and Mike Victor, Chairman of the Compensation Committee, promised me three years severance for wrongful discharge. They later reneged on this promise. Lawsuits are in process for the $750,000 owed to me in earn-outs. I am also owed a minimum of $5,250,000 for pipelines they have been using illegally.
>
> The company is now being run by accountants. It is a disaster and employee morale is at an all time low. Those in charge believe they can make a

(*Id.*)  On the same day, Osborne again wrote to Gas Natural's secretary, noting that he had previously requested a list of all shareholders so that he could "solicit their support in a proxy contest," and requesting the lists of non-objecting beneficial owners.  (PID 42.)  Gas Natural provided the additional list two days later.  (PID 36.)

At the July 30, 2014 shareholder meeting, the shareholders elected the board-nominated directors, ending Osborne's tenure on the board.  (*See* PID 4.)  In a second letter to shareholders, Osborne referred to Gas Natural's directors and officers as Nazis (and other derogatory names), stated that "the company is broke," and told shareholders that he would "keep [them] informed on any developments within the company."  (PID 52.)  Attached to the letter is a chart of "Gas Natural's possible exposure" to damages; the chart states that the figures provided are "only estimates if everything in court would go our way."  (PID 53.)  Osborne wrote a third letter to shareholders criticizing the company's rehiring of its former chief operating officer.  (PID 55.)  Although the second letter was dated August 12, 2014, and the third letter was dated September

---

difference by pushing buttons.  At the June 25th board meeting, cash flow was a cause for concern.  I suggested we take the Directors Fees from $5,000 to $2,000 to help in this matter.  The directors instead chose to milk the company and instead of giving the money to the share holders [sic] by granting themselves each 4,000 shares, the equivalent of $44,000 per director.  Another example of their antics, during the only meeting I ever missed due to a surgery in 2013, the remaining board members raised the Directors Fees from $2,000 to $4,000.

I am asking for your help in running these greedy individuals out of our company.  You will receive additional letters from me in the future.  If you have your own concerns or complaints, please address them to me in writing to my office or directly at [redacted].

Sincerely,
Richard M. Osborne

(PID 10.)

9, 2014, both letters were mailed in the same envelope in mid-September 2014. (PID 337.)
Osborne did not file any of the three letters with the SEC. (PID 329, 335–36, 338.)

Gas Natural filed suit against Osborne, alleging that Osborne's three letters to shareholders were solicitations under Regulation 14a and seeking to enjoin him from making further solicitations without first complying with the regulation. (PID 6–7.) Gas Natural also alleged the letters were defamatory, but later voluntarily dismissed that count without prejudice. (PID 7, 73.) Gas Natural simultaneously moved for a temporary restraining order and preliminary injunction. (PID 20.)

At a hearing on the motion, Osborne testified that he filed the state-court action with the initial purpose of delaying the shareholder meeting so that he could engage in a proxy fight. (PID 323–24.) He stated that he refiled the suit to void the July 30, 2014 election, and requested the state court to require Gas Natural to hold a new shareholder meeting. (PID 331; *see also* PID 305.) He further testified that Gas Natural typically holds its annual shareholder meetings in the summer and that board members are elected at the annual meeting to one-year terms. (PID 332.) Osborne admitted that he wanted to regain control of the company and that, in order to do that, he had to explain to shareholders why the directors needed to be replaced. (PID 334–35; *see also* PID 338.) He testified that to engage in a proxy fight the "first thing you got to do is get a proxy solicitor" who does all the work, and that he contacted a proxy solicitor who declined the employment. (PID 346–47, 356.)

Christopher J. Hubbert, Gas Natural's corporate counsel, testified that it is typical in a proxy contest to send shareholders "fight letters" that are critical of management in advance of a formal request for a proxy, which indicates to shareholders that there is a looming proxy fight.

He opined that, based on his experience, Osborne's letters constituted solicitations under SEC regulations. (PID 375–76.)

The district court heard testimony, advanced the trial on the merits, and entered a permanent injunction. (PID 409.) The court found that Osborne intended to solicit Gas Natural's shareholders and did not abandon his solicitation efforts because he was seeking to void the July 30, 2014 election via the state lawsuit. (PID 410–411.) The court thus determined that the letters should have been filed with the SEC and that no exemption applied. (PID 410.) The court enjoined Osborne from sending any unregistered letters to shareholders so long as he maintains the state-court action seeking to void the July 30, 2014 election. The court noted, however, that if the state-court case is resolved, the injunction will dissolve automatically, as the facts will have changed. (PID 221.) Osborne now appeals.

**II.**

This court reviews the ultimate decision to grant an injunction for an abuse of discretion. *Planet Aid v. City of St. Johns*, 782 F.3d 318, 323 (6th Cir. 2015). The district court abuses its discretion where it commits "a clear error of judgment in the conclusion it reache[s] upon a weighing of the relevant factors or where it improperly applies the law or uses an erroneous legal standard." *Schlaud v. Snyder*, 785 F.3d 1119, 1124 (6th Cir. 2015) (quoting *United States v. Haywood*, 280 F.3d 715, 720 (6th Cir. 2002)) (internal quotation marks omitted). We review the district court's factual findings under the clearly-erroneous standard, *King v. Zamiara*, 788 F.3d 207, 217 (6th Cir. 2015), and its legal rulings de novo, including any First Amendment conclusions. *Planet Aid*, 782 F.3d at 323.

The standard for a permanent injunction is essentially the same as for a preliminary injunction except that the plaintiff must show actual success on the merits rather than a

likelihood of success. *Am. Civil Liberties Union of Ky. v. McCreary Cty.*, 607 F.3d 439, 445 (6th Cir. 2010). A plaintiff seeking a permanent injunction must demonstrate that: (1) it has suffered an irreparable injury; (2) remedies available at law are inadequate to compensate for that injury; (3) an equitable remedy is warranted considering the balance of hardships between plaintiff and defendant; and (4) the public interest would not be disserved by the injunction. *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union v. Kelsey-Hayes Co.*, 750 F.3d 546, 559 (6th Cir. 2014), *vacated on other grounds*, No. 13-1717, 2015 WL 4538811 (6th Cir. July 28, 2015) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

## III.

Osborne contends: (1) the injunction is overbroad and thus violates his free-speech rights; (2) the court erred in finding the letters subject to—and not exempt under—Regulation 14a; and (3) the court erred in granting the injunction without finding irreparable harm. Because federal courts normally "will not decide a [federal] constitutional question if there is some other ground upon which to dispose of the case," *Bond v. United States*, 134 S. Ct. 2077, 2087 (2014) (quoting *Escambia Cty. v. McMillan*, 466 U.S. 48, 51 (1984) (per curiam)), we address these issues out of turn.

## A.

Under Federal Rule of Civil Procedure 65(d), an order granting an injunction must (1) state the reasons why it issued, (2) state its terms specifically, and (3) describe in reasonable detail the acts restrained or required. In a bench trial, the court must make findings of fact and state its conclusions of law. Fed. R. Civ. P. 52(a)(1). A district court must make specific findings concerning the four injunction factors, unless the issue can be resolved on fewer factors.

*Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399 (6th Cir. 1997); *see also*

*Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982) (holding that a

"district court abuses its discretion when it grants a preliminary injunction without making

specific findings of irreparable injury to the party seeking the injunction, and such an injunction

must be vacated on appeal"). Absent the requisite findings and reasons for the injunction, this

court will vacate the injunction and remand for further proceedings. *See Ford Motor Co. v. M.L.*

*Cottingham, Inc.*, 228 F.2d 911, 911 (6th Cir. 1955) (per curiam).

The district court here did not make findings regarding any of the permanent-injunction

factors. Gas Natural nevertheless contends that an express finding of irreparable harm is

unnecessary because Osborne "demonstrated the likelihood of future violation." (Gas Natural

Br. 22.) An injunction is "unavailable absent a showing of irreparable injury, a requirement that

cannot be met where there is no showing of any real or immediate threat that the plaintiff will be

wronged again—a 'likelihood of substantial and immediate irreparable injury.'" *City of Los*

*Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502

(1974)). Thus, "[t]he purpose of an injunction is to prevent future violations." *United States v.*

*W.T. Grant Co.*, 345 U.S. 629, 633 (1953). The bases of Gas Natural's argument and the district

court's ruling are that Osborne solicited shareholders in anticipation of a proxy fight and the

solicitations are not exempt under section 14a-2(b)(1). (*See* Gas Natural Br. 20–21.) But as we

discuss below, Osborne's solicitations are exempt.

**B.**

Section 14(a) of the Securities Exchange Act of 1934 makes it unlawful to solicit a proxy

"by the use of the mails or by any means or instrumentality of interstate commerce or of any

facility of a national securities exchange or otherwise," in contravention of SEC regulations.

15 U.S.C. § 78n(a)(1). Under Regulation 14a, generally, a solicitation for a proxy may not be made unless a preliminary or definitive proxy statement, along with any soliciting materials, is filed with the SEC, and each person solicited is provided with a copy of the filed statement. 17 C.F.R. §§ 240.14a-3, -6. The regulation defines "solicitation" as:

 i. Any request for a proxy whether or not accompanied by or included in a form of proxy:
 ii. Any request to execute or not to execute, or to revoke, a proxy; or
 iii. The furnishing of a form of proxy or other communication to security holders under circumstances reasonably calculated to result in the procurement, withholding or revocation of a proxy.

*Id.* § 240.14a-1(*l*)(1).

## 1.

The district court held that Osborne's letters are solicitations under the third definition of solicitation, § 240.14a-1(*l*)(1)(iii). Gas Natural does not argue the letters are solicitations under the first two definitions. We thus confine our review to whether Osborne's furnishing of the letters to Gas Natural's shareholders was, under the circumstances, reasonably calculated to result in the procurement, withholding, or revocation of a proxy.

When interpreting a regulation, the court looks first to its plain and unambiguous meaning, *Baptist Physician Hosp. Org., Inc. v. Humana Military Healthcare Servs., Inc.*, 481 F.3d 337, 344 (6th Cir. 2007), and if the regulation is unambiguous, the court's task comes to an end, *Bates v. Dura Auto. Sys., Inc.*, 625 F.3d 283, 285 (6th Cir. 2010). If the regulation is ambiguous, however, the court defers to an agency's interpretation of its own regulation, if any, unless the interpretation is plainly erroneous or inconsistent with the regulation. *Summit Petroleum Corp. v. E.P.A.*, 690 F.3d 733, 740–41 (6th Cir. 2012).

The parties seem to accept that the subjective intent of the person furnishing the communication is dispositive under the third definition of solicitation, and the district court

relied solely on Osborne's testimony regarding his intent in finding that the first letter constitutes a solicitation. However, that reading is at odds with the plain and unambiguous meaning of the regulation. By its terms, the third solicitation definition requires a review of the "circumstances" of the communication's delivery. Moreover, "reasonably calculated" in this context focuses the inquiry on the *manner* in which the communicator attempted to influence a shareholder's proxy decision from the perspective of the shareholder who received the material. *See* Broker–Dealer Participation in Proxy Solicitations, 29 Fed. Reg. 341, 342 (Jan. 15, 1964) (stating that material may constitute solicitation if it is delivered "in a manner likely to cause it to be considered by a security holder in connection with his [or her] voting decision"). Whether a communication is a solicitation "depends upon the nature of the communication and the circumstances under which it was distributed." *Long Island Lighting Co. v. Barbash*, 779 F.2d 793, 796 (2d Cir. 1985); 29 Fed. Reg. at 341–42; *see also Sargent v. Genesco, Inc.*, 492 F.2d 750, 767 (5th Cir. 1974). In short, "[t]he question in every case is whether the challenged communication, seen in the totality of circumstances, is 'reasonably calculated' to influence" a shareholder's decision to provide, revoke, or withhold a proxy. *Long Island Lighting*, 779 F.2d at 796; Joslyn, SEC Release No. 50588, 83 SEC Docket 3127, 2004 WL 2387455, at *11 (Oct. 26, 2004).

In considering the totality of the circumstances, the court considers the contents of the communication. *See* 29 Fed. Reg. at 342 (observing that "whether the material is of a nature calculated to influence the voting . . . depends [in part] upon the content of the material"). And although criticism of management is a factor to consider, *see Capital Real Estate Inv'rs Tax Exempt Fund Ltd. P'ship v. Schwartzberg*, 917 F. Supp. 1050, 1059 (S.D.N.Y. 1996), the SEC has stated that "it is clear . . . that shareholders doing nothing more than exchanging opinions about the management's performance would not be a solicitation." Regulation of

Communications Among Shareholders, 57 Fed. Reg. 48,276, 48,279 n.29 (Oct. 22, 1992) (internal quotation marks omitted). Further, the conditions under which the communication is distributed also are relevant. *See id.* These conditions may include whether there is an ongoing proxy contest, whether there is or will be a request for a shareholders' vote on a matter, and other relevant events. *See* 29 Fed. Reg. at 342 (noting that "[w]here there is no [proxy] contest and the stockholder has no decision as to whether he [or she] will send in [a] proxy or not, material not on its face soliciting material . . . is unlikely to constitute soliciting material"). The timing of the communication in relation to relevant surrounding circumstances should be considered as well. Generally, "the further removed the statement is from an act of shareholder suffrage, the less likely it is that the statement will leave its imprint upon that shareholder action." *Smallwood v. Pearl Brewing Co.*, 489 F.2d 579, 601 (5th Cir. 1974); *see also Brown v. Chi., Rock Island & Pac. R.R. Co.*, 328 F.2d 122, 125 (7th Cir. 1964) (holding that the challenged advertisement was not a solicitation in part because no shareholder meeting had been called and no proxies were solicited).

Communications that do not directly request a shareholder to provide, withhold, or revoke a proxy are nevertheless solicitations under the regulation if they "indirectly accomplish such a result or constitute a step in a chain of communications designed ultimately to accomplish such a result." *Long Island Lighting*, 779 F.2d at 796. To read the regulation narrowly so as to exclude communications that "are part of a continuous plan ending in solicitation and which prepare the way for its success" would circumvent the Act's objectives and leave the SEC "powerless to protect shareholders." *SEC v. Okin*, 132 F.2d 784, 786 (2d Cir. 1943).

Osborne maintains *Okin* and *Long Island Lighting* are questionable authorities and urges us to interpret the regulation to apply only to communications that are "material to the subject

matter" of the shareholder action for which proxies are solicited.[2] But the July letter was material to the pending shareholder meeting, and although Osborne's first letter to shareholders was not reasonably calculated to result in the procurement of a proxy, it was certainly reasonably calculated to result in the revocation or withholding of proxies for the July 30, 2014 director election. The district court found, based largely on Osborne's testimony and the fact that he sought to void the election, that the second and third letters were part of the same solicitation campaign and thus subject to regulation. Because Osborne has not shown this finding is clearly erroneous, *Okin* and *Long Island Lighting* have no bearing.

In the July 9, 2014 letter to shareholders, Osborne identifies himself as former chairman and CEO of Gas Natural, and states that he was "tossed out" of the company even though he had "sav[ed] the company from near bankruptcy." After criticizing decisions made by the board, and stating that the company "is a disaster," Osborne "ask[s] for [shareholders'] help in running these greedy individuals out of our company," and informs shareholders they will receive additional letters. (PID 44.) Fairly read, the letter can be understood as requesting shareholders to withhold or revoke proxies for the then upcoming July 30, 2014 shareholder meeting at which directors would be elected. The letter's content and its timing in relation to the shareholder meeting support the court's finding that it is a solicitation. Indeed, Osborne admits "the July letter was mailed close in time to an upcoming shareholder vote and actually urged shareholders not to support the company's slate of nominees." (Osborne Br. 40.) To the extent the district court thought Osborne's letters were reasonably calculated to result in the procurement of a

---

[2] Contrary to Osborne's contention, this court in *Radol v. Thomas*, 772 F.2d 244 (6th Cir. 1985), did not reject the Second Circuit's reading of solicitation. In that case, this court held that tender offers were subject to 17 C.F.R. § 240.14d-3 and not to the "more extensive legal disclosure requirements" in the proxy rules. *Id.* at 254–55. The court did not express an opinion on the provision at issue here.

proxy, rather than to withhold or revoke a proxy, we disagree. We may nevertheless affirm on any grounds, including those not relied on by the district court. *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 469 (6th Cir. 2014).

The district court also found that the second and third letters were subject to the regulation because they were part of the same solicitation effort. (PID 411.) The court acknowledged that the issue whether the second and third letters are solicitations was "a little more complicated" because the election had passed by the time Osborne sent the additional letters. In finding that the letters are solicitations, the court, in effect, determined that, although Osborne sent the second and third letters after the July 30, 2014 election, there was one solicitation period, and all three letters related to the July 30, 2014 shareholder meeting, because Osborne sought through the state-court action to void the election and require a new election. (PID 305.) The court assumed that if Osborne obtains the relief he requests, he would then have the opportunity to solicit shareholder support in his behalf or to withhold or revoke proxies for the board-nominated directors. Considering the nature of the letters and the circumstances under which they were delivered, we uphold the court's ruling that the letters are solicitations under Regulation 14a.

**2.**

Osborne contends the district court erred in not finding the letters exempt under Regulation 14a-1's safe-harbor provision, section 14a-1(*l*)(2). The regulation provides, in relevant part, that the term "solicitation" does not apply to:

> (iv) A communication by a security holder who does not otherwise engage in a proxy solicitation (other than a solicitation exempt under § 240.14a-2) stating how the security holder intends to vote and the reasons therefor, provided that the communication:
>   . . . .

(B)   Is directed to persons to whom the security holder owes a fiduciary duty in connection with the voting of securities of a registrant held by the security holder[.]

17 C.F.R. § 240.14a-1(*l*)(2)(iv).

Osborne contends that, under state law, he owes a fiduciary duty to shareholders to disclose perceived misdeeds by other directors.  (Osborne Br. 40–41.)  He fails, however, to show that the alleged duty is "in connection with the voting of securities" held by the shareholders.  Further, the letters did not purport to inform the shareholders how Osborne intended to vote.

**3.**

Realizing that the "literal breadth of the new definition of solicitation was so great as potentially to turn almost every expression of opinion concerning a publicly-traded corporation into a regulated proxy solicitation," which "would raise serious questions under the [F]ree [S]peech [C]lause of the First Amendment," the SEC created an exemption for solicitations by persons who do not seek proxy authority and "who are disinterested in the subject matter of a vote."[3]  57 Fed. Reg. at 48,278–79.

The regulation exempts from the filing and delivery requirements in sections 14a-3 and a-6 any solicitation by a person "who does not, at any time during such solicitation, seek directly or indirectly, . . . the power to act as proxy for a security holder and does not furnish or otherwise

---

[3] The SEC elaborated that a disinterested person includes a person whose interest in the matter to be acted upon "aris[es] from the ownership of securities . . . where the shareholder does not receive extra or special benefits that are not shared *pro rata* by all other holders of the same class."  *Id.* at 48,281.  Special benefits do not include benefits from the person's "employment with the registrant."  *Id.*  The SEC also refers to a disinterested person as a person with no "substantial interest in the subject matter of the communication beyond the interest of such person as a shareholder."  *Id.* at 48,278.

request" a form of proxy. 17 C.F.R. § 240.14a-2(b)(1). However, the exemption is not available

to:

**(i)** The registrant or an affiliate or associate of the registrant (other than an officer or director or any person serving in a similar capacity);

**(ii)** An officer or director of the registrant or any person serving in a similar capacity engaging in a solicitation financed directly or indirectly by the registrant;

**(iii)** An officer, director, affiliate or associate of a person that is ineligible to rely on the exemption set forth in this paragraph (other than persons specified in paragraph (b)(1)(i) of this section), or any person serving in a similar capacity;

**(iv)** Any nominee for whose election as a director proxies are solicited;

**(v)** Any person soliciting in opposition to a merger, recapitalization, reorganization, sale of assets or other extraordinary transaction recommended or approved by the board of directors of the registrant who is proposing or intends to propose an alternative transaction to which such person or one of its affiliates is a party;

**(vi)** Any person who is required to report beneficial ownership of the registrant's equity securities on a Schedule 13D (§ 240.13d-101), unless such person has filed a Schedule 13D and has not disclosed pursuant to Item 4 thereto an intent, or reserved the right, to engage in a control transaction, or any contested solicitation for the election of directors;

**(vii)** Any person who receives compensation from an ineligible person directly related to the solicitation of proxies, other than pursuant to § 240.14a-13;

**(viii)** Where the registrant is an investment company registered under the Investment Company Act of 1940 (15 U.S.C. 80a-1 *et seq.*), an "interested person" of that investment company, as that term is defined in section 2(a)(19) of the Investment Company Act (15 U.S.C. 80a-2);

**(ix)** Any person who, because of a substantial interest in the subject matter of the solicitation, is likely to receive a benefit from a successful solicitation that would not be shared pro rata by all other holders of the same class of securities, other than a benefit arising from the person's employment with the registrant; and

**(x)** Any person acting on behalf of any of the foregoing.

*Id.* By its terms, the exemption carves out communications that fall within the definition of

solicitation if during the solicitation period the person does not (1) seek directly or indirectly the

power to act as proxy or (2) deliver a form of proxy—unless one of the ten exceptions to the

exemption applies.

Here, the exemption applies because Osborne effectively requested shareholders not to execute proxies, did not request authority *to act* as proxy for another shareholder, and did not send a proxy form to shareholders.  Plainly, Osborne's first letter, which is fairly understood as a request to withhold or revoke proxies, is not a request to act as proxy for a shareholder.  Without identifying an enumerated exception to the exemption, the district court held that the exemption does not apply to Osborne because the exemption does not "cover someone who is actively engaged in a solicitation, which Mr. Osborne was [doing]."  (PID 410.)  However, a person who "actively engage[s] in a solicitation" is not an enumerated exception.

During the hearing, in response to Osborne's argument that none of the exceptions to the exemption applies, the district court suggested that the ninth exception is applicable, stating that if Osborne is successful in regaining his position on the board (and also in stacking the board with directors who would be supportive of his views), he would receive benefits not shared pro rata with other shareholders.  (PID 396–97.)  The court identified as such benefits the payments Osborne is seeking in the state action for breach of contract.  (*Id.*)  But, assuming Osborne's breach-of-contract claims are valid, any damages award is not a "benefit from a successful solicitation" but, rather, compensation for a legal injury.  And, if the board were to settle Osborne's claim, any benefit would be a "benefit arising from the person's employment." 17 C.F.R. § 14a-2(b)(1)(ix).  Regarding the sixth exception, Osborne testified that he owned less than 5% of Gas Natural's shares and thus he would not be required to report beneficial ownership on a Schedule 13D, but the court deemed that testimony irrelevant.[4]  (PID 351–52.)

---

[4] The parties do not present any argument regarding whether Osborne should have filed the letters with the SEC under section 14a-6(g).  The section 14a-2(b)(1) exemption does not include section 14a-6(g), which requires a person who "owns beneficially securities of the class which is the subject of the solicitation with a market value of over $5 million" to file with the

Because none of the exceptions to the exemption appear to apply, we conclude the court erred in summarily rejecting Osborne's arguments regarding the exemption.

On appeal, Gas Natural contends the fourth exception applies because Osborne intends to be a nominee for director. (Gas Natural Br. 18–19.) But the exception applies if the person is a nominee, not if he intends to become a nominee. Osborne is not a nominee, and could not have been a nominee for director for election at the July 30, 2014 meeting, as the time period for receiving nominations had closed. (PID 231, 237, 345, 347, 356, 388.) Moreover, his letters do not seek support for his election to the board, but, rather, request shareholder nonsupport for the board-nominated directors.

A person who relies on the section 14a-2(b)(1) exemption makes "an irrevocable election to maintain exempt status throughout the relevant soliciting period." 57 Fed. Reg. at 48,281. Accordingly, such person "could not undertake, with respect to the same meeting or solicitation, a regulated proxy solicitation regarding a matter that was the subject of the exempt solicitation without rendering the prior solicitation activity in violation of the full panoply of the proxy rules." *Id.* In a typical case, a solicitation period ends and a new period begins when the electoral action for which shareholder proxies are solicited has been completed or otherwise concluded. *See id.*; *see also* 17 C.F.R. § 240.14a-4(d) (prescribing limits on proxy authority, including limiting voting to the next annual shareholder meeting). In this case, however, the court effectively determined that the solicitation period had not closed following the July 30, 2014 shareholder meeting, but instead remained open "so long as Osborne maintains his [state-court] case wherein he seeks to overturn the election of the board members at the July 30, 2014

SEC a Notice of Exempt Solicitation, along with the solicitation materials within three days after the solicitation is made. 17 C.F.R. § 240.14a-6(g).

annual meeting and he seeks reinstatement to the board." (PID 221.) As such, had Osborne

elected to invoke the exemption for the July 30, 2014 election period, which he contends he did,

he should be exempt during the extended period unless he takes action during the solicitation

period inconsistent with the exemption.

Gas Natural argues the exemption is unavailable to Osborne because he elected to engage

in a proxy fight and admitted to seeking support to replace the current board of directors and

regain his seat on the board. (Gas Natural Br. 18.) The record, however, supports that Osborne

sought to (1) solicit shareholders to withhold or revoke proxies for the July 30, 2014 election and

(2) obtain a judicial order invalidating the July 30, 2014 election and thereby regain his position

on the board. (PID 305.) Although Osborne wrote to the corporate secretary stating that he

wanted the list of shareholders "so I can solicit their support to be reinstated to the Board" and

testified that he wanted "to put forward a slate of [directors] who would be supportive" of his

views, he never directly or indirectly sought the power to act as proxy for another shareholder or

indicated that he would seek such authority for the July 30, 2014 election or a subsequent

election after his failed attempt to hire a proxy solicitor. (PID 40, 324.) Indeed, he did not take

steps to become a nominee for that election or any future election.[5] Further, it is irrelevant under

the exemption that Osborne seeks a judicial decree nullifying the election, as that request for

judicial relief is not a solicitation.

There is no basis, then, to hold that Osborne somehow reversed his election because he

earlier intended to wage a proxy contest, acknowledged that his attacks on the board could aid

---

[5] Even assuming he had testified he will seek proxy authority for the 2014 election, shareholders cannot vote for him in that election because he is not a nominee. *See* 17 C.F.R. § 240.14a-4(d)(1) (a proxy cannot confer authority to vote for a director who is not a bona fide nominee named on the proxy statement).

him in regaining his seat, and did not disavow an interest in a future proxy contest. Unless Osborne actually solicits a proxy or falls within an exception to the exemption, he can operate within the exemption during the July 30, 2014 solicitation period, even as extended by the court due to the state lawsuit. We further note that although the district court held that the state-court action effectively extended the July 30, 2014 election period, creating overlapping election periods, the July 30, 2014 election period must eventually close—either as a result of the state-court ruling or the election of directors at a subsequent election.[6]

### C.

Because we decide this appeal on nonconstitutional grounds, we do not reach the First Amendment issue raised. *See Bond*, 134 S. Ct. at 2087.

### IV.

For these reasons, we **VACATE** and **REMAND** for further proceedings consistent with this opinion.

---

[6] At oral argument, the parties informed the court that the 2015 annual shareholder meeting had occurred on July 30, 2015 and that shareholders had elected board members at the meeting.